IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| LEROY PERNELL, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>FLORIDA BOARD OF GOVERNORS OF THE STATE UNIVERSITY SYSTEM, et al.,<br><br>*Defendants*. | Case No.: 4:22-cv-304-MW-MAF |

### PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH PRELIMINARY INJUNCTION

Plaintiffs LeRoy Pernell, *et al.*, by and through their undersigned counsel, hereby respectfully move this Court to compel Defendants' compliance with the Court's Order preliminarily enjoining enforcement of the Stop W.O.K.E. Act, codified in Florida Statutes section 1000.05(4)(a)–(b), and Board of Governors' Regulation 10.005(2)–(3) and (4)(d) (the "Preliminary Injunction Order"). ECF 63. The Preliminary Injunction Order expressly states that Defendants "must take no steps to enforce the [Act and Regulation] until otherwise ordered." *Id.* at 136 &

1

137. Yet, on December 28, 2022, the State of Florida issued Executive Memorandum No. 23-021 (the "Executive Memorandum"), which cites the enjoined Act and requires the collection of information about activities and programs "related to diversity, equity and inclusion, and critical race theory," referring to the preparation of budget proposals and the monitoring of content for compliance with section 1000.05. *See* Executive Memorandum No. 23-021, attached as Ex. 1, Decl. of Sarah Hinger, Ex. A. Defendants' compliance with the Executive Memorandum would violate the Preliminary Injunction Order, and therefore Plaintiffs respectfully request an order compelling Defendants' compliance with the Preliminary Injunction Order and further clarifying, to the extent necessary, that the Preliminary Injunction Order enjoins Defendants from taking any actions pursuant to the Executive Memorandum.

## **MEMORANDUM IN SUPPORT**

**I.     Procedural History**

In the Preliminary Injunction Order, the Court found Plaintiffs have a strong likelihood of succeeding on claims that the Stop W.O.K.E. Act[1] discriminates against disfavored viewpoints, violating both the First Amendment, ECF 63 at 106, and the Due Process Clause's prohibition on vagueness, *Id.* at 108, and observed

---

[1] Codified in Florida Statutes § 1000.05(4)(a)–(b), and also referred to as the Individual Freedom Act ("IFA").

that the Act "cast[s] a leaden pall of orthodoxy over Florida's state universities." *Id.* at 106.

In reaching these conclusions, the Court found that the Stop W.O.K.E. Act's "prophylactic ban on university employees' speech affects potentially thousands of professors and serves as an *ante hoc* deterrent that 'chills potential speech before it happens.'" *Id.* at 93 (quoting *U.S. v. Nat'l Treas. Emp's Union*, 513 U.S. 454, 468 (1995) ("NTEU")). Plaintiffs faced a credible threat of enforcement, the Court found, including through provisions that "[a]ny 'person aggrieved by a violation . . . has a right of action for such equitable relief as the court may determine.'" *Id.* at 5 (quoting § 1000.05(9), Fla. Stat. (2022)). The Court also cited as "significant" the regulatory command that "'the university will be ineligible for performance funding'" in the following fiscal year if it violates the Act. *Id.* at 57 (quoting Regulation 10.005(4)(d)). "In short," the Court reasoned, "the Board of Governors makes the determination that could lead to withholding performance funding, which in turn leaves the universities little choice but to ban promotion of the eight concepts," threatening Plaintiffs with punishment or the termination of employment, and chilling their protected speech. *Id.* at 71.

The Court preliminarily enjoined enforcement of the Act and the State Board of Governors' implementing regulation, Regulation 10.005(2)—(3) and (4)(d). *Id.* at 136. In issuing this relief, the Court made clear that "[t]he members of the Board

3

of Governors . . . are prohibited from enforcing [the Act and Regulation] against any state university." *Id.* at 130. Further, the Court ordered that Defendants "must take no steps to enforce the [Act and Regulation] until otherwise ordered," and specified that the injunction bars enforcement by Defendants, their agents, and any "others in active concert or participation with any of them." *Id.* at 136; *see also* Fed. R. Civ. P. 65(d).

Within the *Novoa v. Diaz* case, No. 4:22cv324, the Court additionally held that "members of the University of South Florida Board of Trustees are prohibited from enforcing [the Act and Regulation]." ECF 63 at 130. Boards of Trustees for Universities named by *Pernell* Plaintiffs were excluded from the preliminary injunction relief on standing grounds. *Id.* at 76; *see also* ECF 64 at 5. Plaintiffs subsequently filed a First Amended Complaint naming the members of the Boards of Trustees at the University of Florida, the University of South Florida, Florida International University, Florida A&M University, Florida State University, and the University of Central Florida in their official capacities. ECF 76 at ¶¶ 43—48.

## II.   Executive Memorandum No. 23-021

On December 28, 2022, the Office of the Governor issued the Executive Memorandum to Defendant Commissioner Manny Diaz (Commissioner of the Department of Education and Member of the Board of Governors) and Chancellor Ray Rodrigues (Chancellor of the State University System). Ex.1, Hinger Decl.,

Ex. A. Stating that "state law requires dutiful attention to curriculum content at our higher education systems as specified in section[] 1000.05 [the Stop W.O.K.E. Act]," and citing the preparation of legislative "budget proposals," the Executive Memorandum requires the Department of Education and each Florida College and State University system to provide information regarding activities and programs "related to diversity, equity and inclusion, and critical race theory." *Id.*

Specifically, the Executive Memorandum instructs that each institution of higher education "must . . . provide a comprehensive list of all staff, programs, and campus activities," including descriptions and details regarding "[p]ositions, including full and partial [full-time equivalent]," and funding spent to support the program. *Id.* It instructs Defendant Diaz to aggregate and submit these responses no later than January 13, 2023. *Id.* On information and belief, the memo was subsequently communicated to administrators at Plaintiffs' respective universities and to all institutions in the State University System,[2] requesting compliance with the memorandum and the collection of information.

---

[2] ABC News reports that "[a] representative from the State University System of Florida Board of Governors confirmed that all 12 schools in the system received the memo." Kiara Alfonseca & Will McDuffie, *DeSantis Asks State Colleges for Data on Critical Race Theory, Diversity Courses amid 'Stop WOKE' Legal Battles*, ABC News (Jan. 4, 2023, 3:56 PM), https://abcnews.go.com/Politics/desantis-asks-state-colleges-data-critical-race-theory/story?id=96189743.

Despite multiple requests from Plaintiffs' counsel, Defendants' counsel has declined to confirm whether Defendants are taking, or plan to take, any actions pursuant to the Executive Memorandum, but communicated Defendants' position that compliance with the Executive Memorandum would not implicate this Court's Preliminary Injunction Order. *See* January 9, 2023 Email from John Ohlendorf, attached as Ex. 1, Hinger Decl., Ex. B.

## III.   Argument

The purpose behind the Executive Memorandum's direction to collect information about instructors' activities is clearly to enforce the unconstitutional provisions of the Stop W.O.K.E. Act. The Executive Memorandum references Florida Statutes section 1000.05 and its provisions governing "curriculum." *See* Ex. 1, Decl. of Sarah Hinger, Ex. A. The subsections of section 1000.05 introduced through the Stop W.O.K.E. Act are the only measures in the law addressing classroom instruction, or what Defendants contend is curriculum.[3] Further, the Executive Memorandum only seeks information about activities

---

[3] Florida Statutes section 1000.05(2)(d) references the permissibility of separating students by sex for "any portion of class that deals with human reproduction," but does not regulate the content of this curriculum and is not applicable to higher education. The only provision of section 1007.25 relevant to "curriculum content" is the requirement that institutions ensure that students demonstrate civic literacy, including by offering specific courses on civic literacy, American History, or American Government.

6

related to "critical race theory," and "diversity, equity, and inclusion," viewpoints targeted by the Stop W.O.K.E. Act.[4] The Executive Memorandum additionally indicates that the information will be used in the budget process. The potential to withhold institutional funding is a principal mechanism for inducing compliance with the State's preferred orthodoxy of viewpoints in the classroom. As the Court noted, the implications of this provision are "significant," making enforcement against individual instructors increasingly likely, and in turn chilling speech. ECF 63 at 57, 71.

By its express terms, the Executive Memorandum's effort to collect information on instructors' programs is undertaken pursuant to the Stop W.O.K.E. Act, which this Court has already held that Plaintiffs are likely to prove unconstitutionally discriminates on the basis of viewpoint, contains vague requirements, and impermissibly chills instructors' free speech and the rights of students to receive information, thereby interfering with academic freedom.

---

[4] ECF 76 at 7 (citing *2/1/22 House State Affairs Committee* at 01:02:00–01:02:29.070,
(Feb. 1, 2022), https://thefloridachannel.org/videos/2-1-22-house-state-affairs-committee; Press Release, Gov. Ron DeSantis, *Gov. DeSantis Announces Legislative Proposal to Stop W.O.K.E. Activism and Critical Race Theory in Schools and Corporations* (Dec. 15, 2021), https://www.flgov.com/2021/12/15/governor-desantis-announces-legislative-proposal-to-stop-w-o-k-e-activism-and-critical-race-theory-in-schools-and-corporations).

Compiling information about activities in a central list held by the State could only further the chill engendered by the Stop W.O.K.E. Act that the Court sought to remedy through the Preliminary Injunction Order. Instructors are already experiencing chill from the Executive Memorandum and bracing for further action to enforce the Stop W.OK.E. Act through the compiling of information. For example, the vice president of the University of Florida's United Faculty of Florida chapter expressed fear that the compiling of information on activities could be a "direct attempt at smothering academic freedom via state purse-strings."[5] The Executive Memorandum itself alludes to impending consequences through the elimination of funds, echoing penalties under the Stop W.O.K.E. Act.

Even if the withholding of funds were not ultimately to occur, the State's action nonetheless constitutes a First Amendment injury. It is well recognized that "informal sanctions," such as "the threat of invoking legal sanctions and other

---

[5] Kathryn Varn, *DeSantis Wants to Know How Much Florida Colleges Spend on 'Trendy Ideology*,' Tallahassee Democrat (Jan. 4, 2023, 5:35 PM), https://www.tallahassee.com/story/news/politics/2023/01/04/desantis-scrutinizes-florida-university-college-diversity-program-funds/69778762007/; *see also id.* (recounting professor's understanding that the Executive Memorandum seeks information addressed by the Stop W.O.K.E. Act); Ryan Dailey, *DeSantis Requests Diversity and Equity Info from Florida Colleges and Universities* (Jan. 5, 2023, 2:26 PM), https://news.wgcu.org/government-politics/2023-01-05/desantis-requests-diversity-and-equity-info-from-florida-colleges-and-universities (recounting United Faculty of Florida president's concerns with the Executive Memorandum's attempt "to chill speech and to intimidate those [the Governor] disagrees with into remaining silent.").

means of coercion, persuasion, and intimidation," can violate the First Amendment. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) (recognizing that courts "look through forms to the substance" to identify First Amendment violations); *see also Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1122 (11th Cir. 2022) ("[A] government actor can objectively chill speech—through its implementation of a policy—even without formally sanctioning it."); *Okwedy v. Molinari*, 333 F.3d 339, 343 (2d Cir. 2003) (per curiam) ("[A] defendant without . . . direct regulatory or decisionmaking authority can also exert an impermissible type or degree of pressure."); *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (agency investigation "unquestionably chilled" First Amendment rights even where agency "did not ban or seize the plaintiffs' materials" and officials "ultimately decided not to pursue either criminal or civil sanctions").

Despite this Court's order that Defendants "take no steps" to enforce the Act, including in "concert or participation" with others, ECF 63 at 136, *see also* Fed. R. Civ. P. 65(d), Defendants have not provided Plaintiffs' counsel with affirmative assurance of whether the information requested in the Executive Memorandum will be collected or used, let alone how. As reported by the press, Governor DeSantis's office has responded to similar requests for clarification with

the additionally vague and threatening response "stay tuned."[6] As this Court has held, the Stop W.OK.E. Act has already produced a chill on Plaintiffs' constitutionally protected speech.

The specter of punishment and the chill to free speech are furthered by the Executive Memorandum and by the actions of Defendants to gather and transmit information. That the Executive Memorandum originated within the Office of the Governor does not diminish the role of Defendants in this case in furthering enforcement of the Act and their obligation to comply with the Preliminary Injunction Order. *Cf. F.T.C. v. Leshin*, 618 F.3d 1221, 1235 (11th Cir. 2010) ("[D]efendants may not nullify [a decree] by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.") (internal quotation marks omitted). Nor does the First Amendment violation incurred turn on the ultimate decision to pursue a particular enforcement measure.

## IV.   Conclusion

The Executive Memorandum is a further step in enforcing the enjoined Act, in direct violation of the Preliminary Injunction Order. Plaintiffs respectfully request that this Court compel Defendants' compliance with its Preliminary

---

[6] Alfonseca & McDuffie, *supra* note 2.

Injunction Order, including to the extent necessary, clarifying that the Order enjoins actions taken pursuant to the Executive Memorandum.

Dated: January 11, 2023

Respectfully submitted,

| | |
|---|---|
| **AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA, INC.** | **AMERICAN CIVIL LIBERTIES UNION FOUNDATION** |
| /s/ Daniel B. Tilley | /s/ Sarah Hinger |
| Daniel B. Tilley | Leah Watson* |
| Fla. Bar No. 102882 | Sarah Hinger* |
| Katherine H. Blankenship | Emerson Sykes* |
| Fla. Bar No. 1031234 | Laura Moraff* |
| Caroline McNamara | 125 Broad Street, 18th Floor |
| Florida Bar No. 1038312 | New York, NY 10004 |
| 4343 West Flagler Street, Suite 400 | (212) 549-2500 |
| Miami, Florida 33134 | lwatson@aclu.org |
| (786) 363-2707 | shinger@aclu.org |
| dtilley@aclufl.org | esykes@aclu.org |
| kblankenship@aclufl.org | lmoraff@aclu.org |
| cmcnamara@aclufl.org | |
| | **BALLARD SPAHR LLP** |
| Jerry Edwards | |
| Fla. Bar No. 1003437 | /s/ Jason Leckerman |
| 933 Lee Road, Suite 102 | Jason Leckerman* |
| Orlando, FL 32810 | Catharine Lubin* |
| (786) 363-1107 | 1735 Market Street, 51st Floor |
| jedwards@aclufl.org | Philadelphia, PA 19103-7599 |
| | (215) 864-8266 |
| | leckermanj@ballardspahr.com |
| Jacqueline Azis | lubink@ballardspahr.com |
| Florida Bar No. 101057 | |
| 4023 N. Armenia Avenue, Suite 450 | Charles Tobin |
| Tampa, Florida 33607 | Fla. Bar No. 816345 |

(786) 363-2708
jazis@aclufl.org

**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**

/s/ Lauren A. Johnson
Lauren A. Johnson*
Jin Hee Lee*
Santino Coleman*
700 14th Street, Ste. 600
Washington, D.C. 20005†
(202) 682-1300
ljohnson@naacpldf.org
jlee@naacpldf.org
scoleman@naacpldf.org

Alexsis Johnson*
Anna Occhipinti*
40 Rector Street, 5th Floor
New York, NY 10006
(212) 217-1690
amjohnson@naacpldf.org
aocchipinti@naacpldf.org
Washington, D.C. 20005†
(202) 682-1300

*Counsel for Plaintiffs*

1909 K Street NW, 12th Floor
Washington, D.C. 20006
(202) 661-2200
tobinc@ballardspahr.com

Jacqueline Mabatah*
201 South Main Street, Suite 800
Salt Lake City, UT 84111-2221
(801) 531-3063
mabatahj@ballardspahr.com

Isabella Salomão Nascimento*
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2119
(612) 371-3281
salomaonascimentoi@ballardspahr.com

†Mailing address *only*
*Admitted *pro hac vice*

**CERTIFICATE OF COMPLIANCE**

This document complies with the word limit of Loral Rule 7.1(F) because this document contains 2,059 words. This document complies with the type-style requirements of Local Rule 5.1(C) because this document has been prepared in a proportionally spaced typeface using the word-processing system Microsoft Word 2016 in 14-point Times New Roman. Plaintiffs have conferred with Counsel for Defendants more than 24 hours before filing as required by Local Rule 7.1(B).

Dated: January 11, 2023

Respectfully submitted,

/s/ Sarah Hinger
Sarah Hinger*
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
shinger@aclu.org

*Counsel for Plaintiffs*