UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| LEROY PERNELL, et al.,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>FLORIDA BOARD OF GOVERNORS OF THE STATE UNIVERSITY SYSTEM, et al.,<br><br>   *Defendants*. | Case No. 4:22-cv-304-MW-MAF |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

### INTRODUCTION

The question presented by Plaintiffs' motion is a simple one: is providing basic information about state Universities' diversity, equity, and inclusion ("DEI") programs, as directed by the Governor's December 28, 2022 Memorandum, a "step" in the "enforce[ment]" of the Individual Freedom Act or its implementing Regulation? Order Granting in Part and Denying in Part Motions for Prelim. Inj., Doc. 63 (Nov. 17, 2022) ("Prelim. Inj."). The answer is likewise simple: merely collecting and transmitting information is not "enforcing" anything. To "enforce" a law is "to compel obedience to [it]." "*Enforce*," BLACK'S LAW DICTIONARY (11th ed. 2019). The Act and Regulation, for instance, establish two enforcement

1

mechanisms: by universities, through investigating and correcting instruction contrary to the Act; and by the Board, through investigating—and, ultimately, withholding funding from—universities that fail to correct instruction that violates the Act. *See* Board of Governors Regulation 10.005(2)–(4). But merely gathering and transmitting information is not "enforcement." Were Defendants to *actually* violate the Court's Preliminary Injunction—by, for example, commencing an investigation of a university for failing to correct teaching contrary to the Act—Plaintiffs presumably would not be satisfied if the Court "enforced" its injunction by merely directing the Board to report how much money it was spending on the investigation.

Plaintiffs cite no authority whatsoever to support the notion that providing the information at issue "enforces" the Act or Regulation in violation of the Preliminary Injunction. All the cases they rely upon concern substantive First Amendment violations—and this Court does not have properly before it any claim that the December 28 Memorandum *itself* violates the First Amendment. Again, the only issue properly before the Court is whether compliance with the Memorandum "enforces" the Act. None of Plaintiffs' cases speak to that issue.

The Florida Constitution expressly authorizes the Governor to request information of this kind, FLA. CONST. art. IV, § 1, and much of the information at issue has already been made freely available by the Universities—either on their

websites or in their annual budget proposals. Nothing in this Court's command that Defendants must refrain from enforcing the Individual Freedom Act immunizes state universities from providing the Governor's Office with basic information about the programs and activities the State is funding.

## BACKGROUND

### I. Procedural History.

Plaintiffs brought this suit challenging the constitutionality of the Individual Freedom Act ("the Act"), 2022 Fla. Laws 72, which amended the Florida Educational Equity Act ("FEEA") to prohibit state schools and universities from "subject[ing] any student or employee to training or instruction that espouses, promotes, advances, inculcates, or compels such student or employee to believe" any of eight enumerated concepts. FLA. STAT. § 1000.05(4)(a) (as amended by the Act).

Plaintiffs moved for a preliminary injunction restraining enforcement of the Act, and on November 17, 2022, the Court granted that motion in part and denied it in part. The Court concluded that various defendants were likely outside of its jurisdiction at the preliminary injunction stage and denied Plaintiffs' motion as to those parties; however, it concluded that it had jurisdiction to enjoin the members of the Florida Board of Governors of the State University System, in their official

3

capacities, and it granted Plaintiffs' motion as to those parties.[1] In particular, the Court's injunction provides that the members of the Board of Governors "must take no steps to enforce" either the Act or the Board of Governors' regulation implementing it, Regulation 10.005, "until otherwise ordered." Prelim. Inj. at 136.

Defendants have noticed an interlocutory appeal of the Court's preliminary injunction to the Eleventh Circuit and have also requested that the Court of Appeals stay the operation of the injunction pending the appeal. Both the appeal and stay request are currently pending before the Eleventh Circuit.

## II. The Governor's December 28, 2022 Memorandum.

The Florida Constitution gives the Governor of Florida the express power to "require information in writing from all executive or administrative state, county or municipal officers upon any subject relating to the duties of their respective offices." FLA. CONST. art. IV, § 1. Florida's Constitution and statutes also authorize and require the Executive Office of the Governor ("Office") to propose an annual budget—and, as part of that process, to "[m]ake a detailed study, as necessary, of each of the several state agencies." FLA. STAT. § 216.151(1); *see also* FLA. CONST. art. III, § 19. Pursuant to this authority, on December 28, 2022, the Office issued a memorandum instructing the Department of Education and State University System

---

[1] In a parallel case, *Novoa v. Diaz*, No. 22-cv-324, the Court also entered a preliminary injunction against the members of the University of South Florida Board of Trustees in their official capacities.

4

to provide the Office with certain information designed to give the Office "a full understanding of the operational expenses of state institutions" as it "prepares policy and budget proposals ahead of the 2023 Legislative Session." Exhibit 1 to Pls.' Mot. to Compel at 5, Doc. 86-1 (Jan. 11, 2023) ("Memorandum"). Additionally, the memorandum notes that "state law requires dutiful attention to curriculum content at our higher education systems as specified in sections 1000.05 and 1007.25 of the Florida Statutes." Section 1000.05 is the FEEA, which generally forbids discrimination on the basis of race, color, national origin, sex, disability, religion, or marital status in the Florida public education system, and was amended to include the Individual Freedom Act as subsection (4)(a)–(b). Section 1007.25 imposes a variety of degree requirements and prerequisites on postsecondary educational institutions, including a variety of curricular requirements such as civics, mathematics, social sciences, and foreign language. *See* FLA. STAT. § 1007.25(5)–(10).

The December 28 Memorandum instructs the schools at issue "to provide a comprehensive list of all staff, programs, and campus activities related to diversity, equity, and inclusion, and critical race theory," as well as a variety of information about each activity, including the amount of funding spent to support it. The Memorandum instructs the institutions to respond by January 13, 2023.

On January 11, 2023, Plaintiffs filed a motion claiming that the December 28 Memorandum is "in direct violation of the Preliminary Injunction Order" and requesting the Court to "compel Defendants' compliance with its Preliminary Injunction Order, including, to the extent necessary, clarifying that the Order enjoins actions taken pursuant to the [Memorandum]." Pls.' Mot. to Compel Compliance with Prelim. Inj. at 10–11, Doc. 86 (Jan. 11, 2023) ("Motion"). This Court ordered Defendants to respond to the Motion no later than 5:00 p.m. on January 12.

## ARGUMENT

**I.   Compliance with the December 28 Memorandum Does Not Conflict with the Preliminary Injunction.**

A.   The question before this Court is a narrow one: whether the named Board of Governors Members, by collecting and sending to the Executive Office of the Governor the operational information enumerated in the December 28 Memorandum, would be acting in conflict with this Court's Preliminary Injunction. That question, in turn, depends entirely on whether the Board's actions in collecting and transmitting this information would amount to "tak[ing] . . . steps to enforce" either the Act or the Board's implementing regulation. The answer to that question is clear: gathering and transmitting information is not, in law or in common sense, the "enforcement" of anything.

The ordinary meaning of "enforce[ment]" is to "compel obedience to" or "to obtain (payment, obedience, etc.) by force or compulsion." "*Enforce*,"

6

DICTIONARY.COM, https://bit.ly/3GCoDgs. The meaning given to the term in the most prominent legal dictionary is to the same effect: "To give force or effect to (a law, etc.); to compel obedience to." "*Enforce*," BLACK'S LAW DICTIONARY, *supra*. Compliance with the December 28 Memorandum's request for information would not, by any stretch, constitute "enforcement" of the Act or its implementing regulation. It would not "give force or effect" to any portion of the Act, nor would it "compel obedience" to any of its commands. What the Memorandum does—all it does—is direct state universities to gather and transmit certain information about their programs—precisely as the Florida Constitution requires of them. *See* FLA. CONST. art. IV, § 1.

The notion that providing this information is a "step[ ]" in the "enforce[ment]" of the Act, Prelim. Inj. at 136, is completely untenable. Much of the information enumerated in the December 28 Memorandum is already available, provided by the universities wholly apart from this request. The Memorandum requests, for example, a "[b]rief description" of DEI related programs or activities. Many universities, if not all of them, feature descriptions of these programs on their public-facing websites. *See, e.g.*, *About DEI*, UNIV. S. FLA.: DIVERSITY, EQUITY & INCLUSION https://bit.ly/3GCskCQ. The Memorandum requests information about staff positions within these programs. Again, many universities list their DEI staff online. *See, e.g., id., Meet the Staff*, UNIV. S. FLA.: DIVERSITY, EQUITY & INCLUSION

7

https://bit.ly/3D42iHZ. The Memorandum requests information about the "funding spent" on these programs, including "the amount that is state funded." Florida regulations require Universities to provide detailed financial information every time they prepare and submit their Spending Plans to the Board of Governors. *See* Board of Governors Regulation 9.007; *see also* FLA. STAT. § 1011.90; State University System of Florida, Operating Budget, Fiscal Year 2022-2023, https://bit.ly/3CFMuL4. The state universities obviously were not taking "steps" in the "enforcement" of the Individual Freedom Act when they posted this information, including financial information, related to their DEI activities.

Plaintiffs cite *no case* where the mere collection of information was deemed to constitute a violation of a preliminary injunction restraining enforcement of any law. Nor are Defendants aware of any such case. And case law from analogous contexts supports the conclusion that merely requesting information does not amount to the "enforcement" of any law. For instance, in the context of the Administrative Procedure Act, courts have repeatedly held that the mere collection or dissemination of information does not amount to "agency action" because it does not alter anyone's legal rights or obligations. *See City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 434 (4th Cir. 2019) (Department of Defense's failure to provide information for inclusion in the National Instant Criminal Background Check System was not agency action because "[t]he transfer of information between agencies does not,

8

without more, alter the rights and obligations of any party"); *Portland Cement Ass'n v. EPA*, 665 F.3d 177, 193 (D.C. Cir. 2011) ("EPA's decision to collect additional information before proposing greenhouse emissions standards" was not "agency action"); *Hearst Radio v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948) (publication of information collected by the FCC does not constitute "agency action").

The overreaching nature of Plaintiffs' motion is revealed in its final sentence. Whether the motion should be granted, Plaintiffs say, does not "turn on the ultimate decision to pursue a particular enforcement measure." Motion at 10. But because the Court's Preliminary Injunction *only bars* Defendants from taking "steps to enforce" the Act, this sentence means, in Plaintiffs' view, that whether the Board has taken "steps to enforce" the Act does not turn on whether it has "pursue[d] a particular enforcement measure." That is utterly nonsensical.

B. Plaintiffs vaguely argue that compliance with the December 28 Memorandum would violate the injunction because "[t]he purpose behind" it "is clearly to enforce the unconstitutional provisions of the [Act]." Motion at 6. That is not clear at all, given that the Memorandum references other provisions of law wholly unrelated to the Act—including the other, general nondiscrimination requirements of the FEEA and the curricular requirements of FLA. STAT. § 1007.25. But even if the Memorandum *expressly and exclusively requested information relating to compliance with the Act*, it would not be contrary to this Court's

9

Preliminary Injunction. For as explained above, merely gathering and transmitting information about compliance with the Act does not constitute *enforcement* of the Act.

Finally, Plaintiffs attempt to leverage a variety of First Amendment cases into an argument that the December 28 Memorandum is contrary to the Preliminary Injunction. They note that "informal sanctions," such as "the threat of invoking legal sanctions," can "chill speech." Motion at 8–9 (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963); *Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022); *Okwedy v. Molinari*, 333 F.3d 339 (2d Cir. 2003) (per curiam); and *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000)). And the December 28 Memorandum, according to Plaintiffs, "further[s] the chill engendered by the [Act]" in this way, since it "indicates that the information will be used in the budget process," and "[t]he potential to withhold institutional funding is a principal mechanism for inducing compliance with the [Act]." Motion at 7–8.

But the question at hand *is not* whether the December 28 Memorandum independently inflicts some "First Amendment injury," *id.* at 8—indeed, as discussed immediately below, that question is not properly before the Court. Rather, the question here is whether the Board Members' compliance with the Memorandum constitutes a "step" in the "enforce[ment]" of the Act. It does not, and none of the cases cited by Plaintiffs is even remotely relevant to *that* question.

## II. Any Independent First Amendment Challenge to the December 28 Memorandum Is Not Properly Before the Court.

Plaintiffs' Motion can be read to allege that the December 28 Memorandum constitutes a new and *independent* First Amendment violation. They claim, for example, that the Memorandum's request for information "constitutes a First Amendment injury." *Id*. The bulk of the cases they cite pertain to substantive First Amendment violations, not the enforcement of injunctions. *See id.* at 9. And they argue that the Memorandum inflicts a "specter of punishment" and "chill to free speech." *Id.* at 10.

To the extent these passages allege that the December 28 Memorandum itself violates the First Amendment, quite apart from the Act, that allegation is not properly before the Court. Defendants vigorously deny any suggestion that the December 28 Memorandum's request for the compilation of information is in any way contrary to the Free Speech Clause. But to the extent Plaintiffs disagree, they would at a minimum need to seek leave to amend their Complaint to add that entirely new claim and the factual allegations supporting it (including allegations giving them standing to sue any parties that would be necessary to pursue such a claim).

## CONCLUSION

Plaintiffs' motion should be denied.

Dated: January 12, 2023                    Respectfully Submitted,

<div style="margin-left: 40%">

/s/ Charles J. Cooper
Charles J. Cooper (Bar No. 248070DC)
John D. Ohlendorf (*Pro Hac Vice*)
Megan M. Wold (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Defendants Florida Board of Governors of the State University System, et al.*

</div>

## CERTIFICATE OF WORD COUNT

Pursuant to Northern District of Florida Rule 7.1(F), the undersigned counsel hereby certifies that the foregoing Defendant's Memorandum of Law in Support of Motion to Dismiss, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 2,410 words as measured by Microsoft Office for Word 365.

<u>/s/ Charles J. Cooper</u>
Charles J. Cooper