# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

### CASE NO. 4:22-cv-304-MW-MAF

LEROY PERNELL, *et al.*,

    Plaintiffs,

v.

FLORIDA BOARD OF GOVERNORS OF
THE STATE UNIVERSITY SYSTEM, *et al.*,

    Defendants.
_____/

### MOTION BY MEMBERS OF THE FLORIDA HOUSE OF REPRESENTATIVES TO QUASH NON-PARTY SUBPOENAS

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Representatives Andrade, Bell, Borrero, Fernandez-Barquin, Fine, Maggard, Massullo, McClain, Overdorf, Payne, Roth, Shoaf, Sirois, and Truenow ("the Legislators") hereby move to quash the subpoenas served on November 17, 2022[1] ("the subpoenas").

### INTRODUCTION

Plaintiffs challenge the constitutionality of Florida's Individual Freedom Act

---

[1] In order to accommodate an ongoing dialogue between counsel, as well as an intervening special legislative session and Plaintiffs' counsel's holiday vacations, Plaintiffs thereafter stipulated to extend the time to respond to the subpoenas until January 13, 2023. Plaintiffs further stipulated in writing that a motion to quash filed by that date would be timely.

("the Act") and complain primarily that it infringes the First Amendment and that it is impermissibly vague. This Court issued a preliminary injunction on those grounds, and that injunction is currently on appeal. Plaintiffs also claim, however, that the Act violates the Equal Protection Clause and that it was "enacted for a racially discriminatory purpose." Doc. 76 at 95.

The Act, in pertinent part, provides that it constitutes prohibited discrimination to subject a student in Florida's public educational institutions to instruction that promotes certain enumerated concepts—among them, that "[m]embers of one race . . . are morally superior to members of another race[.]" Fla. Stat. § 1000.05(4)(a) (2022). With regard to their equal protection claim, then, Plaintiffs apparently contend that a state violates the Equal Protection Clause when it prohibits its educational employees from, *inter alia*, instructing students that one race is superior to another.

On that dubious premise, Plaintiffs have issued burdensome subpoenas to 14 members of the Florida House of Representatives (none of whom are parties to this action), apparently in the hope that someone once said something about Critical Race Theory—or about dozens of other race-related topics—that could be used to demonstrate that the Act was imbued with an improper legislative motive in violation of the Equal Protection Clause. As this Court and the Eleventh Circuit have recognized, the legislative privilege prohibits these sort of fishing expeditions even

where a plaintiff invokes a provision of the United States Constitution and claims that lawmakers had an improper motive. Additionally, the scope of the subpoenas violates Rule 45 because of its nearly boundless reach. For these reasons and others explained below, the Legislators request that this Court quash the subpoenas.

## BACKGROUND

Through the subpoenas,[2] Plaintiffs seek three years' worth of communications and other documents that relate not only to the Act and to "critical race theory" (hereafter, "CRT"), but also to "Racial Justice Protests" and "Black Lives Matter."[3] Plaintiffs seek such communications between the Legislators (including their staff) and Defendants; the Governor or the Executive Office of the Governor; other legislators; Christopher Rufo; and their respective employees and staff. Plaintiffs also seek communications between the Legislators (including their staff) and any employees or staff of the Boards of Trustees for any State University System institution. *See* Exhibit 1, Requests #1–11. Plaintiffs also seek all "notes, memoranda, research, written analysis, white papers, studies, reports, or opinions relied upon, created by, or reviewed by" the Legislators and their staff regarding the

---

[2] As the subpoenas served on the Legislators are identical in substance, the Legislators attach one such subpoena as **Exhibit 1**.

[3] As explained *infra*, Plaintiffs' definitions of those terms are extraordinarily broad and vague and are themselves sufficient to warrant judicial relief.

3

creation, drafting, enactment, implementation, and enforcement of the Act. *Id.*, Requests #12–15.

Finally, Plaintiffs demand transcripts, drafts, and copies of all *public* statements relating to the foregoing subject matter (Request #16); all documents and communications "assessing or predicting the potential impacts" of the Act (Request #17); and all documents and communications exchanged between the Legislators (including their staff) and any other legislator or any member of the Executive Office of the Governor (including their respective staff) regarding the legislative hearings or "any concerns or opposition to [the Act] shared or voiced during such hearings" (Request #18).

The Legislators timely served objections on December 1, 2022, asserting the legislative privilege and a series of other detailed objections. Counsel met and conferred on December 7, at which time Plaintiffs' counsel and the undersigned counsel both requested additional time to consider various issues raised during the meeting and to consult with their clients. Plaintiffs subsequently extended the return dates of the subpoenas until January 13, 2023, in order to facilitate that process. Counsel had several additional meetings in the interim, during which time Plaintiffs presented an onerous wish list of 73 proposed search terms—including terms as general as "civil rights" and "protest" and as patently irrelevant as "sexism" and

4

"feminism."[4] See **Exhibits 2 and 3**. Unfortunately, this motion has now become necessary.

## ARGUMENT

I. THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY ARE BARRED BY LEGISLATIVE PRIVILEGE.

Rule 45 requires the Court to "quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter . . . ." Fed. R. Civ. P. 45(d)(3)(A)(iii). "The legislative privilege 'protects against inquiry into acts that occur in the regular course of the legislative process and *into the motivation for those acts*.'" *In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015) (emphasis in original) (citation omitted). Plaintiffs seek legislative discovery in connection with their equal protection claim,[5] apparently hoping that they might identify a document that would show a discriminatory purpose. *See Jones v. Governor of Fla.*, 15 F.4th 1062, 1065 (11th Cir. 2021) (alteration in original) (citation omitted) ("[P]roof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim."). Because "[t]he subpoenas' only purpose [is] to support the lawsuit's inquiry into the

---

[4] During the parties' last meet-and-confer on January 11, 2023, Plaintiffs' counsel indicated that they would be willing to eliminate some of the proposed search terms but that they would still insist on the majority of the proposed search terms.

[5] Counsel for Plaintiffs (Mr. Edwards) confirmed as much to the undersigned counsel during one or more of their meet-and-confer conversations.

motivation behind [the Act]," however, the subpoenas "strike[] at the heart of the legislative privilege." *Hubbard*, 803 F.3d at 1310.

The legislative privilege "protects the legislative process itself," and therefore protects "legislators' actions in the proposal, formulation, and passage of legislation." *Id.* at 1308 (citing *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951)). It also "furthers the policy goals behind legislative immunity by preventing parties from using third-party discovery as an end-run around legislative immunity— harassing legislators through burdensome discovery requests." *League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 453 (N.D. Fla. 2021).

Given that the only apparent purpose of the subpoenas is to try to discover evidence of an improper legislative motive or purpose, the "factual heart" of Plaintiffs' equal protection claim "and the scope of the legislative privilege [are] one and the same: the subjective motivations of those acting in a legislative capacity." *Hubbard*, 803 F.3d at 1311.

The majority of the requests in the subpoenas seek communications (and related documents) between the Legislators[6] and others who (to the extent such communications exist) would have been part of the legislative process. The most obvious example is Plaintiffs' request for communications between the Legislators

---

[6] The requests extend to the Legislators' staff, but the legislative privilege "extends also to [the Legislators'] staff members." *Fla. v. U.S.*, 886 F. Supp. 2d 1301, 1302 (N.D. Fla. 2012).

6

and other legislators. But communications with Defendants, the Governor's office, or members of the Boards of Trustees regarding the Act likewise would be part of the legislative process. So too would communications with Mr. Rufo if any Legislator had communicated with him regarding the subject-matter of the Act. *See, e.g.*, *League of Women Voters*, 340 F.R.D. at 454 ("communications with third parties are subject to legislative privilege so long as those communications were part of the formulation of legislation").[7] Thus, for example, when Plaintiffs request communications between the Legislators and the Governor's office "regarding H.B. 7 or Critical Race Theory" (Request #3), they are asking for communications relating to the Legislators' "actions in the proposal, formulation, and passage of [the Act]" and therefore are requesting documents that are protected by the privilege. *Hubbard*, 803 F.3d at 1308.

Conversely, to the extent such communications exist but are *unrelated* to the "proposal, formulation, [or] passage" of the Act, they would not be relevant anyway and therefore would not be discoverable for that alternative reason. *See, e.g.*, *Hubbard*, 803 F.3d at 1311 ("Any material, documents, or information that did not

---

[7] *See also Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980) ("Meeting with 'interest' groups, professional or amateur, regardless of their motivation" is privileged because it "is a part and parcel of the modern legislative procedures through which legislators receive information possibly bearing on the legislation they are to consider."); *see Kalinoski v. Lackawanna Cty.*, 511 F. App'x 208, 213 (3d Cir. 2013) (same).

go to legislative motive was irrelevant to the retaliation claim, while any that did go to legislative motive was covered by the legislative privilege.").[8] Stated simply, because the only purpose of the subpoenas is to try to discover evidence of improper legislative motive, any documents that might bear on a Legislator's motive are covered by the privilege, and any documents would not bear on a Legislator's motive are irrelevant.

Finally, the legislative privilege does not yield merely because Plaintiffs have invoked a provision of the United States Constitution. *See, e.g.*, *League of Women Voters*, 340 F.R.D. at 456 ("merely asserting a constitutional claim is not enough to overcome the privilege"). The Legislators maintain (as their colleagues did in *League of Women Voters*) that the privilege is absolute in civil cases, and particularly in a civil case such as this one where there is nothing "extraordinary" about the nature of the civil claim. *League of Women Voters*, 340 F.R.D. at 456. *See also Fla. v. U.S.*, 886 F. Supp. 2d 1301, 1303 (N.D. Fla. 2012) (recognizing that legislative privilege issues arise routinely in voting rights cases and in equal protection cases and that "the critical question" in both types of commonplace cases "often is whether the legislature acted with a discriminatory purpose"). Indeed, "the Supreme Court has explained that, for purposes of the legislative privilege, there is a fundamental

---

[8] As explained *infra*, Rule 45 requires quashal to the extent that a subpoena requests irrelevant information.

difference between civil actions by private plaintiffs and criminal prosecutions by the federal government." *Hubbard*, 803 F.3d at 1311–12 (citing *U.S. v. Gillock*, 445 U.S. 360, 372–73 (1980)).

But even if the Court applies the five-factor balancing approach that it did in *League of Women Voters*, the subpoenas should still be quashed (or at least severely curtailed). In that case, even after finding that the relevance, "availability of other evidence," and "seriousness of the litigation" factors all weighed in favor of disclosure, this Court nonetheless concluded that the last factor weighed so "heavily in favor of non-disclosure" that it largely counteracted the other factors. *Id.* at 458.

That "final factor is the legislative privilege's purpose." *Id.* at 457. As this Court has already recognized, the privilege "shields [legislators] from political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box." *Id.* (quoting *E.E.O.C. v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011)) (alteration in original). Moreover, "the need to encourage frank and honest discussion among lawmakers favors nondisclosure." *Id.* (citation omitted). In light of the purpose of the privilege, this Court "[struck a] balance" by allowing only the production of "documents containing factually based information used in the decision-making process or disseminated to legislators or

committees, such as committee reports and minutes of meetings."[9] *Id.* at 458. Surely, Plaintiffs are entitled to "nothing more" here.[10] *Id.*

## II. THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY IMPOSE AN UNDUE BURDEN AND SEEK IRRELEVANT INFORMATION.

### A. The subpoenas impose an undue burden.

Rule 45 also requires the Court to "quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Indeed, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Plaintiffs have not done so here. Instead, Plaintiffs' subpoenas are unduly burdensome for numerous reasons.

First, three of the four terms that make up the lion's share of the requests are defined in a manner that is hopelessly vague. With regard to CRT, rather than asking the Legislators for documents that mention CRT, Plaintiffs ask for all CRT-related communications and define the term to mean "the framework to identify and

---

[9] The Legislators note that committee meeting packets and staff analysis are publicly available on the House website, and that videos of the committee hearings themselves are available on the Florida Channel website. *See*, *e.g.*, House Education & Employment Committee hearing, February 8, 2022, *available at* https://thefloridachannel.org/videos/2-8-22-house-education-employment-committee/.

[10] During the course of counsel's several meet-and-confer conversations, they discussed the scope of this Court's *League of Women Voters* ruling but ultimately were unable to agree on its scope.

challenge ways racism is embedded in American society"—thereby leaving it to the Legislators to speculate about the contours of that "framework." *See* Exhibit 1 at 5. This would be a hopeless task, of course, and any requirement to do so would be unduly burdensome. Yet Plaintiffs have insisted that limiting a search to documents that mention "CRT" or "critical race theory" would be insufficient.

Plaintiffs' definition of "Black Lives Matter" is similarly vague and would impose an undue burden. Plaintiffs use the term to "encompass[] all affiliated community organizations and individuals in the broader Black Lives Matter collective." *Id.* Again, rather than simply asking for documents that mention "Black Lives Matter," Plaintiffs apparently demand an expansive search that would include documents "regarding" unidentified "affiliated community organizations" and "individuals" that are part of an amorphous, broader "collective" that "aim to abolish institutional racism." As just one example of the resulting undue burden, Request #2 (the first request to mention Black Lives Matter) would require the Legislators to identify all documents "reflecting communications" "regarding" any unnamed individuals who are part of the undefined BLM "collective." This too would be a hopeless and unduly burdensome endeavor. Similarly, Plaintiffs impose an undue burden by placing the onus on the Legislators to determine what "other term[s], phrase[s], or hashtag[s] [are] reasonably related to the Black Lives Matter movement." *Id.*

11

Their definition of "Racial Justice Protests" suffers the same infirmities. It extends even to "statements" and "self-expressions" "made in an individual . . . capacity to advocate for principles of racial justice, racial equality, racial equity, and ending racism." *Id.* at 5–6. Indeed, Plaintiffs define the term to include even any "*private* expression of objection, disapproval, or dissent" (to what, they do not specify). As just one example of the resulting undue burden, Request #2 (the first request to mention "Racial Justice Protests") would require the Legislators to identify all documents "reflecting communications" "regarding" any individual's "self-expressions" that might be part of that individual's subjective "efforts" to "improve racial equity." There is no discernable way to do so, and it would impose an undue burden on the Legislators if they were required to attempt such a futile task. And it bears emphasis that the attached list of proposed search terms resulted from counsel's invitation to Plaintiffs to clarify what they were requesting, largely because of these vague definitions.

Next, the three-year timeframe for the subpoenas is overbroad and unduly burdensome. As this Court recognized in its injunction order, the Governor "originally announced" a legislative proposal that preceded the Act in December 2021. Doc. 63 at 2, n. 2. Yet the subpoenas would require production of documents dating back to January 1, 2020. Exhibit 1, at 9. And even though Plaintiffs' counsel

12

eventually offered to reduce that timeframe to no earlier than March 1, 2021,[11] that "best and final" offer is still nearly a year before the Governor even announced his proposed bill.

Moreover, Plaintiffs' insistence that the Legislators produce a privilege log imposes an undue burden, both for the reasons expressed in *Hubbard* and because Plaintiffs' definitions are so vague that a comprehensive group of responsive documents cannot be gathered even if the privilege and other objections had not been asserted. Plaintiffs also want not only the *Legislators*' communications, but even the communications to or from their *staff* members. This only exacerbates the foregoing undue burdens. But each of the foregoing burdens compound the others when considered together, and collectively they render the subpoenas egregiously overbroad and unduly burdensome.

B.     The subpoenas call for irrelevant information.

"While Rule 45 does not specifically identify irrelevance as a reason to quash a subpoena, it is generally accepted that the scope of discovery allowed under Rule 45 is limited by the relevancy requirement of the federal discovery rules." *Jordan v. Commissioner, Miss. Dept. of Corrections*, 947 F.3d 1322, 1329 (11th Cir. 2020). "Thus, a subpoena issued under Rule 45 should be quashed to the extent it seeks

---

[11] Plaintiffs' justification was that the Governor "publicly spoke out against CRT" in March 2021, thereby rendering all CRT-related communications relevant from that point forward.

irrelevant information." *Id.* "As indicated by the language of Rule 26, the relevance of information sought in discovery depends on the claims asserted in the underlying action and the legal standards that govern those claims." *Id.*

Although documents regarding the Act (or documents that *mention* critical race theory) might be relevant, documents regarding "racial justice protests" and "Black Lives Matter" are not. And that is true even before accounting for the substantial overbreadth and vagueness problems identified above with regard to Plaintiffs' definitions of those terms, and even without accounting for Rule 26's proportionality requirement. *See*, *e.g.*, *G.H. v. Marstiller*, No. 4:19cv431-mw/cas, 2020 WL 13228155, at *2 (N.D. Fla. Mar. 24, 2020) (recognizing that a subpoena issued under Rule 45 is subject to Rule 26's proportionality standard).

Even assuming those terms can be defined cogently, if those terms are within the scope of relevant discovery then it would seem that *any* race-related terms would be fair game. Indeed, as Plaintiffs' proposed search terms demonstrate, they apparently believe that to be so. *See* Exhibit 3 (asking the Legislators to search for and review all documents mentioning terms such as "racist" and "racial"). But it cannot be said that any communication relating to the topic of race, or even any document that mentions protests or Black Lives Matter, makes any facts in this case

"more likely."[12] *League of Women Voters*, 340 F.R.D. at 459. Accordingly, such documents are neither relevant nor proportional to the needs of this litigation. *Cf. Greater Birmingham Ministries v. Sec. of State for State of Alabama*, 992 F.3d 1299, 1324 (11th Cir. 2021) (expressing "skepticism" that "discriminatory intent could be ascertained from the statements of one legislator speaking about another bill").

## CONCLUSION

For the foregoing reasons, the Legislators respectfully request that the Court enter an order quashing the subpoenas.

Respectfully submitted,

*/s/ David Axelman*
David Axelman (FBN 90872)
General Counsel
**THE FLORIDA HOUSE OF REPRESENTATIVES**
317 The Capitol
402 South Monroe Street
Tallahassee, Florida 32399-1300
Tel: (850) 717-5500
Email: David.Axelman@myfloridahouse.gov
*Counsel for Non-Party Representatives*

---

[12] Were it otherwise, a plaintiff alleging a discriminatory motive for any legislation would have carte blanche to demand all documents mentioning any term that relates to race.

## CERTIFICATE OF CONFERRAL

In accordance with Local Rule 7.1(B), I hereby certify that I conferred with Plaintiffs' counsel repeatedly, beginning on December 7, 2022, and ending on January 11, 2023, in a good-faith attempt to resolve the issues raised herein, and that the parties were unable to resolve the issues raised in this motion.

<i>/s/ David Axelman</i>

## RULE 7.1(F) CERTIFICATION

In accordance with Local Rule 7.1(F), I hereby certify that the foregoing memorandum contains 3,220 words, excluding the case style, signature block, and certifications.

<i>/s/ David Axelman</i>