# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**LEROY PERNELL,**
**et al.,**

            ***Plaintiffs,***

  **v.**                           **Case No.: 4:22cv304-MW/MAF**

**BRIAN LAMB, et al.,**

        ***Defendants.***

_____/

## ORDER GRANTING IN PART AND DENYING MOTION TO QUASH

This Court has considered, without hearing, fourteen non-party Legislators' motion to quash, ECF No. 91, and Plaintiffs' response in opposition, ECF No. 96. Plaintiffs filed this action in August 2022, alleging that Florida law, as amended by House Bill 7 ("HB 7"), violates the Constitution in multiple ways. In November 2022, this Court granted in part and denied in part Plaintiffs' motion for preliminary injunction, ECF No. 63, finding the challenged provisions are viewpoint discriminatory in violation of the First Amendment and void for vagueness under the Fourteenth Amendment's Due Process Clause. Defendants have appealed that decision.[1]

---

[1] Although Defendants have appealed this Court's preliminary injunction directed at Plaintiffs' First Amendment and vagueness claims, this Court is not divested of jurisdiction to resolve this discovery dispute with respect Plaintiffs' equal protection claim. Typically, a notice

Relevant here, Plaintiffs also claim that HB 7 violates the Fourteenth Amendment's Equal Protection Clause, because the Legislature allegedly passed it with the intent to discriminate based on race. Pursuing evidence of discriminatory intent, Plaintiffs subpoenaed documents from thirteen Florida legislators who co-sponsored HB 7 in the Florida House of Representatives and a fourteenth legislator who vocally supported HB 7 in the Florida House of Representatives. These Legislators now move to quash Plaintiffs' subpoenas.

## I

Federal Rule of Civil Procedure 45 directs this Court to quash a subpoena if the subpoena "requires [the] disclosure of privileged or other protected matter, if no exception or waiver applies," or if it "fails to allow a reasonable time to comply." Fed. R. Civ. P. 45(d)(3)(A)(i), (iii). The Legislators raise a claim of privilege and assert the subpoenas are unduly burdensome and seek irrelevant information. This Court starts with the privilege arguments.

## A

"The federal courts have the authority and duty to recognize claims of privilege that are valid under federal common law." *In re Hubbard*, 803 F.3d 1298,

---

of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over the aspects of the case involved in the appeal." *United States v. Tovar–Rico*, 61 F.3d 1529, 1532 (11th Cir. 1995). Here, Plaintiffs' equal protection claim is not the subject of this Court's preliminary injunction and thus is it involved in the appeal.

1307 (11th Cir. 2015) (citing Fed. R. Evid. 501). To claim privilege in response to a subpoena, a person must "expressly make the claim" and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A)(i)–(ii). The party asserting a privilege bears the burden to show that the privilege applies. *In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987). Here, the Legislators assert legislative privilege.

Legislative privilege is an "important" privilege that "has deep roots in federal common law."[2] *Hubbard*, 803 F.3d at 1307. The privilege is best understood in conjunction with "the parallel concept of legislative immunity." *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 180 (4th Cir. 2011). Legislative immunity provides broad immunity to legislators "to be free from arrest or civil process for what they do or say in legislative proceedings." *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951). And legislative privilege furthers the policy goals behind legislative immunity by preventing parties from using third-party discovery as an end-run around legislative immunity—harassing legislators through burdensome

---

[2] Indeed, this Court recognizes the sanctity of legislative privilege and legislative immunity and the purposes these doctrines serve in preventing harassment of lawmakers from burdensome discovery requests. *See, e.g.*, *League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446 (N.D. Fla. 2021) (granting motions to quash); *Support Working Animals, Inc. v. Moody*, 457 F. Supp. 3d 1193, 1209 (N.D. Fla. 2020) ("Under the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law." (quoting *Women's Emergency Network v. Bush*, 323 F.3d 937, 949–50 (11th Cir. 2003))).

discovery requests. *See Wash. Suburban*, 631 F.3d at 181. Put another way, legislative immunity shields legislators from direct liability for actions taken during legislative proceedings; legislative privilege shields legislators from indirect liability through the costs of litigation. *See id.* (explaining that legislative privilege recognizes that "litigation's costs do not fall on named parties alone.").

Here, the Legislators' motion to quash raises three issues relating to legislative privilege. These issues are (1) the legislative privilege's scope, (2) whether the privilege is absolute in civil cases, and (3), if the privilege is not absolute, when can a party overcome it (and whether Plaintiffs have done so here).

a

The first question is whether the documents Plaintiffs seek implicate legislative privilege at all—*i.e.*, what is the scope of the privilege? The Eleventh Circuit has defined the privilege as covering "both governors' and legislators' actions in the proposal, formulation, and passage of legislation." *Hubbard*, 803 F.3d at 1308. Here, both sides apparently agree that legislative privilege extends to most of the documents Plaintiffs have subpoenaed. The Legislators assert "[t]he majority of the requests in the subpoenas seek communications (and related documents) between the Legislators and others who (to the extent such communications exist) would have been part of the legislative process." ECF No. 91 at 6. They also note that "[t]he requests extend to the Legislators' staff, but the legislative privilege

4

'extends also to the Legislators' staff members.' " *Id*. at 6 n. 6 (quoting *Florida v. United States*, 886 F. Supp. 2d 1301, 1302 (N.D. Fla. 2012)). Plaintiffs agree that "[t]he subpoenas target communications between the Legislators and other members of the Florida Legislature, Governor Ron DeSantis, Defendants, or Christopher Rufo . . . discussing the Stop W.O.K.E. Act, critical race theory, Black Lives Matter, racial justice protests, and any reports, studies, or similar documents evaluating the law that the Legislators reviewed." ECF No. 96 at 4. To the extent they include communications with third parties, legislative privilege attaches "so long as those communications were part of the formulation of legislation." *League of Women Voters of Fla., Inc.*, 340 F.R.D. at 454.

As the Eleventh Circuit has explained, "inquiry into the motivation" behind a state legislative enactment "strikes at the heart of the legislative privilege." *Hubbard*, 803 F.3d at 1310. Similarly, the Supreme Court has observed that, in cases such as this, where legislators "might be called to the stand at trial to testify concerning the purpose of the official action, . . . such testimony frequently will be barred by privilege." *Arlington Heights Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 (1977); *accord Florida*, 886 F. Supp. 2d at 1303. Following that logic, this Court concludes that most of the documents Plaintiffs seek from the Legislators are subject to legislative privilege—namely, communications with their staff, other members of

the Florida Legislature and their staff, and third parties regarding their motivations and mental impressions concerning the formulation of HB 7.

To the extent responsive documents or communications do not involve motivations or mental impressions concerning the formulation of legislation, the Legislators argue such evidence is irrelevant and therefore not discoverable. ECF No. 91 at 7. In so stating, the Legislators assert "the only purpose of the subpoenas is to try to discover evidence of improper legislative motive," thus "any documents that might bear on a Legislator's motive are covered by the privilege, and any documents [that] would not bear on a Legislator's motive are irrelevant." *Id*. at 8. Plaintiffs counter that they are still entitled to factually based information used in the decision-making process and "any opinions that fall outside the deliberative process." ECF No. 96 at 16. On this point, the parties appear to be talking past each other.

This Court agrees with Plaintiffs with respect to factually based information used in the decision-making process. Certainly, communications or documents setting out the Legislators' or their staff members' motivations and mental impressions regarding HB 7 fall squarely within the legislative privilege. But purely factual documents, including bill drafts, bill analyses, white papers, studies, and news reports provided by or to the Legislators and their staff members, do not fall within the scope of this privilege. Subject to the qualifications set out in more detail

6

at the end of this Order, this Court finds that the Legislators must produce such factual information to Plaintiffs pursuant to the subpoenas. The Legislators' suggestion that legislative privilege shields them from responding to *any* subpoenas concerning the formulation of legislation, even when responsive documents contain no mental impressions, opinions, or commentary regarding the legislation, turns the caselaw discussing the qualified nature of this privilege on its head.

b

This is not the end of the inquiry. To the extent an inference could be drawn that the transmission or receipt of such factual information evidences a Legislator's motivation with respect to legislation and thus falls within the scope of Legislative privilege, this Court addresses whether that privilege must yield in this case. In opposing the motions to quash, Plaintiffs argue that legislative privilege is qualified and must yield in important cases such as this one. In response, the Legislators argue that, in civil cases, their privilege is absolute. But as this Court previously recognized in *League of Women Voters of Florida, Inc.*, 340 F.R.D. at 455, both the Eleventh Circuit and the Supreme Court have explained that "a state lawmaker's privilege" may give way to "important federal interests such as 'the enforcement of federal criminal statutes.' " *Hubbard*, 803 F.3d at 1311 (quoting *United States v. Gillock*, 445 U.S. 360, 373 (1980)). The question, then, is whether the exception to legislative privilege extends beyond the circumstances identified in *Gillock* and *Hubbard*.

7

"[T]he Supreme Court has not set forth the circumstances under which the privilege must yield to the need for a decision maker's testimony." *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018). To support their argument that legislative privilege must yield in this case, Plaintiffs point to district court cases—including this Court's decision in *League of Women Voters of Florida, Inc.*—finding that the privilege gives way in private civil cases concerning important, federally guaranteed public rights. *See, e.g., League of Women Voters of Fla., Inc.*, 340 F.R.D. at 455; *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 335 (E.D. Va. 2015). Arguing otherwise, the Legislators point to this Court's decision in *Florida v. United States*. *Florida* concerned litigation in the United States District Court for the District of Columbia over the preclearance of legislation regulating elections under section 5 of the Voting Rights Act. 886 F. Supp. 2d at 1302. Ancillary to that litigation, certain parties moved in this Court to compel Florida state legislators to sit for depositions. *Id.* In response, the legislators raised legislative privilege. *Id.* Rejecting the argument that legislative privilege must give way in Voting Rights Act cases, this Court observed that "Voting Rights Act cases are important, but so are equal-protection challenges to many other state laws, and there is nothing unique about the issues of legislative purpose and privilege in Voting Rights Act cases." *Id.* at 1304.

8

This Court agrees with the Legislators to the extent that merely asserting a constitutional claim is not enough to overcome the privilege. *See Am. Trucking Ass'ns, Inc. v. Alviti*, 14 F.4th 76, 88 (1st Cir. 2021) (explaining that "[w]ere . . . the mere assertion of a federal claim sufficient, even one that addresses a central concern of the Framers, the privilege would be pretty much unavailable largely whenever it is needed"). But this Court also finds that some civil cases implicate federal interests that are at least as important—if not more important—than the enforcement of federal criminal statutes, where the privilege undoubtedly gives way. As this Court explained in *League of Women Voters of Florida, Inc.*, this Court must apply a five-factor balancing test to determine whether the legislative privilege must yield to Plaintiffs' need for the evidence they seek. 340 F.R.D. at 456; *see also Bethune-Hill*, 114 F. Supp. 3d at 337.

c

The five factors this Court must consider are (1) whether the evidence Plaintiffs seek is relevant, (2) whether other evidence is available, (3) whether the litigation is sufficiently "serious," (4) whether the government is involved in the litigation,[3] and (5) whether upholding the subpoena defeats the legislative privilege's purpose. *Bethune-Hill*, 114 F. Supp. 3d at 338. With these factors in mind, this Court turns back to the motion before it.

---

[3] Though, as this Court explains below, this factor is not particularly useful.

1

The first factor is relevance. The Legislators suggest that many of the documents Plaintiffs seek have little relevance because individual legislators' motivations are not particularly relevant to the overall legislative motive. There is some truth to this argument. *See* ECF No. 91 at 14–15 (citing *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1324 (11th Cir. 2021) (explaining that the intent of one legislator, even if they sponsored a bill, is of limited relevance)). And as other courts have noted, "[t]o demonstrate intentional discrimination, . . . plaintiffs need not offer direct evidence of discriminatory intent." *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *3 (N.D. Ill. Oct. 12, 2011). But just because other evidence is more relevant does not make this evidence irrelevant. Rather, the subjective motivations of HB 7's leading sponsors are highly relevant to many of the issues before this Court. Thus, as to the Legislators, this factor weighs, slightly, in favor of disclosure.

2

The second factor is the availability of other evidence. On this factor, the Legislators argue that "committee meeting packets and staff analysis are publicly available on the House website, and that videos of the committee hearings themselves are available on the Florida Channel website." ECF No. 91 at 10 n.9.

Plaintiffs likewise note that they have subpoenaed documents from the Governor and Christopher Rufo. But this Court is not convinced that simply because some documents are publicly available and that Plaintiffs have subpoenaed Christopher Rufo and the Governor, the bulk of the evidence Plaintiffs seek is otherwise available. Indeed, the Governor's office is likely to assert privilege in opposing Plaintiffs' subpoenas.

Further, this case is distinguishable from the *League of Women Voters of Florida, Inc.*, in which the Legislators voluntarily turned over subpoenaed documents but opposed subpoenas for several Legislators to sit for depositions. 340 F.R.D. at 452. Here, on the other hand, the parties are not even able to agree to the production of documents—even with this Court's guidance from the *League* case. Compared to the *League* case, this factor weighs slightly in favor of denying the motion to quash.

3

The third issue is the litigation's seriousness. All litigation is serious. Nonetheless, the Legislators contend that this case still falls short of the seriousness of, say, the federal criminal prosecution addressed in *Gillock*. While a close call, this Court finds that, Plaintiffs are seeking to vindicate public right that impact thousands of faculty and students, and in that respect, their equal protection claim is akin to criminal prosecutions. *See League of Women Voters of Fla., Inc.*, 340 F.R.D. at 457.

Moreover, this Court has already determined that the challenged provisions, on their face, violate the First Amendment and the Fourteenth Amendment's Due Process Clause. Thus, this factor weighs in favor of disclosure.

### 4

The fourth factor is the government's involvement in the litigation. As this Court has previously noted, *id.*, this factor—drawn, as all these factors are, from deliberative process privilege case law—is inapt in the legislative privilege context. Of course, the state is involved, there would be no point in subpoenaing the Legislators if it were not. Accordingly, this factor is a wash.

### 5

The final factor is the legislative privilege's purpose. The Legislators argue that this factor carries the most weight in favor of either quashing "or at least severely curtail[ing]" Plaintiffs' subpoenas, citing this Court's recognition in the *League* case "that 'the privilege is necessary because it 'shields [legislators] from political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box.' " *League of Women Voters of Fla., Inc.*, 340 F.R.D. at 457 (internal citation omitted). This Court agrees and again finds that "[t]o allow Plaintiffs to pry into the most sensitive aspects of the legislative process would 'chill legislative debate' and 'discourage earnest discussion within governmental walls.' " *Id.* at 458. This factor weighs heavily in favor of non-disclosure.

12

So the factors are mixed, but this Court must strike some balance. Plaintiffs recognize as much, asserting this Court "possesses the discretionary power to narrow the scope of the subpoena to avoid unduly chilling legislative deliberations and conduct in-camera review, if it chooses." ECF No. 96 at 15. As this Court noted previously, "[o]ne way to do so is 'by limiting privileged documents to those that contain opinions, recommendations or advice' and allowing the production of 'documents containing factually based information used in the decision-making process or disseminated to legislators or committees, such as committee reports and minutes of meetings.' " *League of Women Voters of Fla., Inc.*, 340 F.R.D. at 458 (quoting *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *9).

As this Court explained, above, such documents do not fall within the scope of the Legislators' privilege. But to the extent an inference could be drawn that communicating such information, like emailing a Legislator a committee report or white paper concerning critical race theory in universities, necessarily evidences a motivation with respect to HB 7, this balance gives Plaintiffs some of the most relevant evidence under *Arlington Heights* while at the same time limiting the most egregious intrusions into the legislative process. As in the *League* case, this Court finds that Plaintiffs are entitled to "the materials and information available [to the Legislature] at the time a decision was made" and nothing more. *ACORN v. Cnty. of*

13

*Nassau*, No. CV05-2301(JFB)(WDW), 2007 WL 2815810, at *3 (E.D.N.Y. Sept. 25, 2007).

B

Next, this Court must also address the Legislators' undue burden and relevancy objections to the subpoenas. ECF No. 91 at 10–16. Rule 45 protects "subpoena recipient[s] by requiring the issuer to 'take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.'" *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020) (quoting Fed. R. Civ. P. 45(d)(1)). Further, "it is generally accepted that the scope of discovery allowed under Rule 45 is limited by the relevancy requirement of the federal discovery rules." *Id.* "Thus, a subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information." *Id.*

In turn, the Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). And the Federal Rules of Evidence provide that relevant information must have a "tendency to make a [consequential] fact more or less probable." Fed. R. Evid. 401.

To start, the Legislators assert the subpoenas are unduly burdensome because (1) "three of the four terms that make up the lion's share of the requests are defined in a manner that is hopelessly vague," (2) "the three-year timeframe for the

14

subpoenas is overbroad and unduly burdensome," and (3) Plaintiffs insist that the Legislators produce a privilege log. ECF No. 91 at 10–13. Plaintiffs respond that they have offered to narrow the scope of their requests based on a set of more-targeted Boolean search terms, they are willing to limit the timeframe to March 2021 to the present (based on the Governor's public statements about critical race theory), and that a privilege log is only necessary insofar as this Court determines that legislative privilege must yield. ECF No. 96 at 21–23.

"The undue burden analysis requires this court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Jordan*, 947 F.3d at 1337 (internal quotation marks and citation omitted). "Several factors have been identified as pertinent to the analysis, including the relevance of the information requested to the underlying litigation and the burden that would be imposed by producing it." *Id*. "The status of the subpoena recipient as a non-party is also a factor that can weigh against disclosure in the undue burden inquiry." *Id*.

Here, Plaintiffs assert the interests served by demanding compliance with the subpoenas are strong. These interests entail discovery of

> highly probative [evidence] . . . at the heart of their equal protection claim, including contemporary statements and actions of key legislators, additional evidence supporting [Plaintiffs'] theory of the specific sequence of events leading up to the enactment of HB 7, and information available about the potential impact of the Stop W.O.K.E.

Act to assess the foreseeability of the law's disparate impact and legislators' knowledge of that impact.

ECF No. 96 at 20 (internal quotation marks omitted). Such considerations are all relevant "evidentiary factors" the Eleventh Circuit looks to in proving an equal protection claim under the Supreme Court's *Arlington Heights* test. *Id*. at 20–21.

In addition, the information requested is certainly relevant to Plaintiffs' underlying equal protection claim. Plaintiffs' requests relate to three key concepts that have been front and center in the Florida Legislature since George Floyd was murdered in May of 2020. More specifically, these concepts allegedly have been invoked in discussions concerning public education in Florida and elsewhere. *See* ECF No. 76 ¶¶ 94–130, 198–99. Any burden imposed by Plaintiffs' broad terms— "Critical Race Theory,"[4] "Black Lives Matter,"[5] and "Racial Justice Protests,"[6]—is

---

[4] Plaintiffs' subpoenas state that "[a]s used herein, 'Critical Race Theory' encompasses Your references to 'Black communism,' 'divisive concepts,' 'equity,' 'indoctrination,' 'Marxist ideology,' 'Marxism,' 'oppression,' 'privilege,' 'race essentialism,' 'racism,' 'racist,' 'spirit murder,' 'systemic racism,' 'The 1619 Project,' 'white fragility,' 'white supremacy,' 'woke' speech, the 'woke agenda,' and 'wokeness.'" ECF No. 91-1 ¶ 15.

[5] Plaintiffs' subpoenas state that "[a]s used herein, 'Black Lives Matter' encompasses all affiliated community organizations and individuals in the broader Black Lives Matter collective that aim to abolish institutional racism and policing through direct actions, political education, and community organizing. The phrase 'Black Lives Matter' includes '#BlackLivesMatter,' '#BLM,' and any other term, phrase, or hashtag reasonably related to the Black Lives Matter Movement." ECF No. 91-1 ¶ 16.

[6] Plaintiffs' subpoenas define "Racial Justice Protests" as "any and all demonstrations, statements, campaigns, direct actions, or self-expressions made in an individual or collective capacity to advocate for principles of racial justice, racial equality, racial equity, and ending racism, including with respect to police accountability, defunding the police and police reform in the United States and worldwide from January 1, 2020, to the present. This includes any physical, online, and public or private expression of objection, disapproval, or dissent, and any and all direct

mitigated by Plaintiffs' proffered limitations (both in the subpoenas' definitions of those terms, and their suggested search terms included in the parties' conference prior to the Legislators' filing of this motion). To be clear, though, this Court agrees that, given Plaintiffs' claim focuses on racial animus, their subpoenas should not reach search terms related to gender discrimination. *See* ECF No. 91 at 4–5 (noting list of proposed search terms included "sexism" and "feminism").

Likewise, any asserted burden imposed by the three-year timeframe is mitigated by Plaintiffs' limitation to production of responsive documents from March 2021 to the passage of HB 7. And the asserted burdens associated with producing a privilege log are mitigated by this Court's determination that the factually based information at issue—such as committee reports, white papers, studies, draft bills, bill analyses, etc.—are not privileged documents, accordingly no privilege log needs to be created pursuant to this Order. Instead, if the Legislators' produce responsive documents containing both factually based information subject to Plaintiffs' subpoenas and privileged mental impressions or statements regarding motivations concerning HB 7, the Legislators need only redact the privileged information before producing the responsive document. Based on the Legislators' counsel's communication with Plaintiffs, this Court is hard-pressed to determine

---

action, political education and community organizing efforts to combat racism, improve racial equity, and address racial inequality in the United States and worldwide." ECF No. 91-1 ¶ 17.

that—with the qualifications imposed by this Order—the Legislators will face any serious burdens in responding to Plaintiffs' subpoenas. *See* ECF No. 96-1 at 6. Indeed, the Legislators' counsel indicated that he had already reviewed the Legislators' "emails and documents on the House's server (going back to March 2021)" for seven search terms and "there were very few documents containing the foregoing terms that are even arguably responsive to [Plaintiffs'] document requests, and there were no (or virtually no) responsive documents pertaining to most categories." *Id*.

Accordingly, given the limitations set out in this Order, this Court finds that Plaintiffs are entitled to documents containing factually based information used in the decision-making process or disseminated to legislators or committees, committee reports, white papers, studies, draft bills, bill analyses, etc. To the extent such documents are subject to legislative privilege, Plaintiffs' interests in demanding compliance with their subpoenas outweigh the Legislators' interests in quashing them. To ensure Plaintiffs' subpoenas do not pose an undue burden on the Legislators, this Court limits the timeframe of their requests to March 2021 to the present and limits the scope of the objected-to definitions ("Critical Race Theory," "Black Lives Matter," and "Racial Justice Protests") to the search terms set out on ECF No. 91-3 at 1–2. However, such terms shall not include the Boolean search

terms relating to gender discrimination—namely, "Not all men – including hashtag of same phrase," "Sexis!," and "Feminis!"

In short, this Court reiterates that it agrees that the overwhelming majority of the documents Plaintiffs seek are privileged and need not be produced. Instead, this Court requires *only* the production of those non-privileged documents that contain factually based information used in the decision-making process. To the extent a communication containing such information could raise an inference regarding a Legislator's motivation in passing legislation, this Court has determined that legislative privilege must yield to Plaintiffs' need for such evidence. And this Court finds that the subpoenas are neither unduly burdensome, nor irrelevant (with the exception of the gender-based search terms as discussed above). Indeed, the Legislators' own counsel summed up the limited nature of production and relative ease associated with searching for responsive documents based on a shorter, but relatively broad, list of search terms in his communication with Plaintiffs' counsel prior to filing the motion now before this Court. Plaintiffs' subpoenas shall be answered according to the limitations this Order imposes.

Accordingly,

**IT IS SO ORDERED**:

1. The Legislators' motion to quash, ECF No. 91, is **GRANTED in part and DENIED in part**.

2. The Legislators shall produce responsive documents subject to the limitations imposed by this Order **on or before March 8, 2023**; namely:

   a. Documents containing factually based information used in the decision-making process or disseminated to legislators or committees;

   b. The scope of the subpoenas' terms "Critical Race Theory," "Black Lives Matter," and "Racial Justice Protests," extend only to the search terms identified at ECF No. 91-3 at 1–2, excluding the Boolean search terms relating to gender discrimination—namely, "Not all men – including hashtag of same phrase," "Sexis!," and "Feminis!";

   c. The timeframe is limited to March 2021 through the passage of HB 7; and

   d. The Legislators need not produce a privilege log pursuant to this Order. Instead, if a responsive document includes privileged mental impressions or statements evidencing a motivation concerning the formulation of legislation, the

Legislator need only redact the privileged statement(s) and produce the responsive document in redacted form.

**SO ORDERED on February 22, 2023.**

**s/Mark E. Walker**
**Chief United States District Judge**