UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**LEROY PERNELL**, et al.,

   *Plaintiffs*,

   v.                               No. 4:22-cv-304-MW-MAF

**FLORIDA BOARD OF GOVERNORS
OF THE STATE UNIVERSITY SYSTEM**, et al.,

   *Defendants*.

_____

## MOTION TO STAY DISCOVERY ORDER

On January 13, 2023, fourteen members of the Florida House of Representatives ("the Members") moved to quash subpoenas served on them. ECF91. On February 22, the Court denied that motion in part, ordering the Members to produce responsive "[d]ocuments containing factually based information used in the decision-making process or disseminated to legislators or committees." ECF100 at 20. The Members filed a timely notice of appeal on February 28. ECF104. They now respectfully ask this Court to stay its February 22 order while the appeal is pending. *See In re Hubbard*, 803 F.3d 1298, 1305–07 (11th Cir. 2015) (holding that denied legislative privilege claims are immediately appealable and explaining that the Eleventh Circuit had "stayed the district court's production order pending [its] decision"). In the alternative, the Members respectfully ask the Court to

1

administratively stay its February 22 order while they seek a stay pending appeal from the Eleventh Circuit.

I.  **THE COURT SHOULD ORDER A STAY PENDING APPEAL.**

A stay pending appeal turns on four factors:

1. the likelihood the moving party will prevail on the merits;
2. the prospect of irreparable injury to the moving party if relief is withheld;
3. the possibility of harm to other parties if relief is granted; and
4. the public interest.

11th Cir. R. 27-1(b)(2). Here, every factor favors a stay.

**A. The Members Are Substantially Likely to Succeed on the Merits.**

**1.** The Court ordered the Members to produce "purely factual documents, including bill drafts, bill analyses, white papers, studies, and news reports provided by or to the Legislators and their staff members" on the grounds that those materials "do not fall within the scope of" the legislative privilege. ECF100 at 6. That conflicts with the Eleventh Circuit's decision in *Hubbard*.

As *Hubbard* explains, unlike the attorney-client privilege, which shields particular materials based on their content, legislative privilege bars a particular type of *inquiry*—"inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.'" 803 F.3d at 1310 (emphasis omitted) (citation omitted). It is the "claim" that "defines the purpose of the subpoenas, which

2

in turn answers the question of whether the privilege applies." *Id*. at 1311 n.12. Because in *Hubbard* "[t]he subpoenas' only purpose was to support the lawsuit's inquiry into the motivation behind" the challenged law, the Eleventh Circuit quashed the inquiry entirely, rejecting a document-by-document approach. *Id*.

The same should have happened here. The "factual heart" of Plaintiffs' equal protection claim "and the scope of the legislative privilege [are] one and the same: the subjective motivations of those acting in a legislative capacity." *Hubbard*, 803 F.3d at 1311. The sole reason for the subpoenas was to "determine whether racial discrimination 'was a motivating factor'" in the Legislature's decision to enact the challenged law. ECF96 at 2 (quoting *Vill. of Arlington Heights v. Metro. House. Dev. Corp.*, 429 U.S. 252, 265 (1977)); *see* ECF100 at 2 ("Pursuing evidence of discriminatory intent, Plaintiffs subpoenaed documents from thirteen Florida legislators who cosponsored HB 7 in the Florida House of Representatives and a fourteenth legislator who vocally supported HB 7 in the Florida House of Representatives."). Accordingly, the subpoenas should have been quashed.

**2.** The Court held in the alternative that, "[t]o the extent an inference could be drawn that the transmission or receipt of such factual information evidences a Legislator's motivation with respect to legislation and thus falls within the scope of Legislative privilege," the "privilege must yield in this case." ECF100 at 9. That was error because "a state legislator's common-law . . . immunity from civil suit" is

3

"absolute," *United States v. Gillock*, 445 U.S. 360, 372 (1980) (discussing *Tenney v. Brandhove*, 341 U.S. 367 (1951)), and as this Court's order recognizes, legislative immunity and legislative privilege are "'parallel concept[s],'" ECF100 at 3 (quoting *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 180 (4th Cir. 2011)).

To be sure, "the Eleventh Circuit and the Supreme Court have explained that 'a state lawmaker's privilege'" may give way to "important federal interests such as 'the enforcement of federal criminal statutes.'" ECF100 at 7 (citing *Hubbard*, 803 F.3d at 1311, *and Gillock*, 445 U.S. at 373). But that was a reference to the sovereign interest in enforcing a federal statute that supersedes otherwise applicable common-law privileges. *Gillock*, 445 U.S. at 373. In other words, the privilege is absolute but, like every common-law doctrine, may be modified or abrogated by Congress.

In *Gillock*, the Supreme Court held that the privilege yielded in a federal bribery prosecution. 445 U.S. at 362, 373. In that context, Congress had acted "to make state [legislators], like all other persons, subject to federal criminal sanctions," and given that circumstance, the Court "discern[ed] no basis . . . for a judicially created limitation that handicaps proof of the relevant facts." *Id.* at 374. That made *Gillock* very different from *Tenney*, a private civil case brought under Section 1983 in which the Supreme Court held that "a state legislator's common-law absolute immunity from civil suit survived" that enactment because Congress did not clearly intend otherwise. *Id.* at 372 (discussing *Tenney*).

4

*Tenney* makes clear that Congress did not intend to abrogate the "absolute" privilege when it enacted Section 1983—the statute at issue here. *See Gillock*, 445 U.S. at 372 (discussing *Tenney*). And *Gillock* makes crystal clear that "*Tenney* and subsequent cases on official immunity have drawn the line at civil actions." 445 U.S. at 373. Thus, even if *Gillock* qualifies the privilege in some civil cases, it does so only when the federal government enforces an act of Congress clearly intended to abrogate the privilege, as in a federal prosecution. *See Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 419–20 (D.C. Cir. 1995) ("[S]ensitivities to the existence of criminal proceedings . . . suggest that the testimonial privilege might be less stringently applied when inconsistent with a sovereign interest, but is 'absolute' in all other contexts."). This is no such case.

**3.** The Court's ruling is a significant departure even from the district courts that have applied the same five-factor test to assertions of legislative privilege. As those courts have explained, "the [five] factors will weigh against disclosure and in favor of upholding the privilege in all but the extraordinary case." *Citizens Union of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 156 (S.D.N.Y. 2017). The Court's order does the opposite, guaranteeing at least partial disclosure of core legislative materials even in a mine-run case.

The order agrees that "individual legislators' motivations are not particularly relevant to the overall legislative motive," ECF100 at 10, and that the need to avoid

5

"'chill[ing] legislative debate'" weighed "heavily in favor of non-disclosure," *id.* at 12. But the order requires disclosure of "some of the most relevant evidence under *Arlington Heights*," *id.* at 13, *i.e.*, evidence of legislative motive, principally because "Plaintiffs are seeking to vindicate public right[s] that impact thousands" and other sources of evidence might be hard to come by, *id.* at 11. If legislators and their staff must search for, review, and produce documents here, they may well be ordered to do so in the many other, similar cases that are filed after each legislative session.

It is no answer that "this Court has already determined that the challenged provisions, on their face, violate the First Amendment and the Fourteenth Amendment's Due Process Clause." ECF100 at 11–12. The Court has not determined that the statute was enacted with invidiously discriminatory intent, as *Arlington Heights* requires. The Court's determination that the statute is likely unconstitutional for wholly different reasons only underscores that there is no need for disclosure of privileged materials at all.

Nor is the order innocuous because it requires disclosure only of documents like "draft bills" and "bill analyses." ECF100 at 18. Those materials capture the preliminary views of legislators and staff no less than a discussion by e-mail—which the Court's order protects—and are vital to the process of crafting, proposing, and revising legislation. The order thus discourages members from the drafting process

6

altogether, lest they be required to search for and produce out-of-context materials in support of allegations against them.

### B. The Other Factors Favor a Stay.

As the Court has observed, the primary purpose of legislative privilege is to shield legislators "from political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box." *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181. That goal is defeated the moment inquiry into legislative motives is allowed to proceed. A stay pending appeal is therefore necessary to prevent irreparable harm to the Members.

On the other side of the ledger, Plaintiffs will suffer no harm from a stay pending appeal. The case can continue while this narrow discovery issue is before the Eleventh Circuit. And to the extent Plaintiffs believe the evidence at issue is so important that the whole case must be stayed, the law at issue is currently enjoined, so it cannot harm Plaintiffs or anyone else. To alleviate any remaining concern, the Members will seek expedited treatment in the Eleventh Circuit.

As for the public interest, a stay is necessary because the privilege "protects the legislative process itself" to the same extent it protects individual legislators. *Hubbard*, 803 F.3d at 1308. Concern that an early bill draft, for example, will be made public, taken out of context, and used to embarrass the drafter plainly will chill the drafting process to the detriment of the process and the public. And to whatever

extent Plaintiffs' interest in the merits of this case aligns with the public's, the Court's preliminary injunction ensures that any delay resolving this discovery issue poses no threat to the public interest.

## **CONCLUSION**

For the foregoing reasons, the Members respectfully ask the Court to stay its February 22, 2023 discovery order while the Members appeal that order. In the alternative, the Members ask the Court to administratively stay the order while they seek a stay pending appeal from the Eleventh Circuit.

Respectfully submitted,

ASHLEY MOODY
*Attorney General*

HENRY C. WHITAKER (FBN 1031175)
   *Solicitor General*
/s/ Daniel William Bell
DANIEL WILLIAM BELL (FBN 1008587)
   *Chief Deputy Solicitor General*
EVAN EZRAY (FBN 1008228)
   *Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
PL-01 the Capitol
Tallahassee, Florida 32399
(850) 414-3300
(850) 410-2672 (fax)
*daniel.bell@myfloridalegal.com*

DAVID AXELMAN (FBN 90872)
   *General Counsel*
J. MICHAEL MAIDA (FBN 95055)
   *Deputy General Counsel*
The Florida House of Representatives
329 The Capitol
Tallahassee, Florida 32399
(850) 717-5500
*david.axelman@myfloridahouse.gov*

*Counsel for Representatives Andrade, Bell, Borrero, Fernandez-Barquin, Fine, Maggard, Massullo, McClain, Overdorf, Payne, Roth, Shoaf, Sirois, and Truenow*

## CERTIFICATE OF CONFERRAL

Consistent with Local Rule 7.1(B), undersigned counsel conferred with Plaintiffs in good faith about the relief requested in this motion, which Plaintiffs oppose.

## CERTIFICATE OF WORD COUNT

Consistent with Local Rule 7.1(F), this motion contains 1677 words.

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February, 2023, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

*/s/ Daniel William Bell*
Chief Deputy Solicitor General
