## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

LEROY PERNELL, et al.,
      Plaintiffs,

v.                                 Case No. 4:22-cv-304-MW/MAF

FLORIDA BOARD OF GOVERNORS
OF THE STATE UNIVERSITY
SYSTEM, et al.,
      Defendants,
_____/

### NON-PARTY MR. JAMES R. COPLAND'S
### MOTION TO QUASH RULE 45 SUBPOENA
### AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 45 ("Rule 45"), Mr. James R. Copland ("Mr. Copland"), a non-party, moves to quash Plaintiffs' Subpoena to Testify in a Civil Action and Request for Production of Documents, dated March 11, 2024 (the "Subpoena") and states:

### INTRODUCTION

This Court should enter an order prohibiting the deposition of Mr. Copland. *See* Ex. A., Non-Party Mr. James R. Copland's Subpoena to Testify at a Deposition in a Civil Action. Mr. Copland is a senior fellow and director of Legal Policy at the Manhattan Institute (the "Institute"). The Subpoena seeks information protected by the First Amendment to the United States Constitution.

1

## FACTUAL BACKGROUND

Plaintiffs sued the Florida Board of Governors, the Trustees of University of Florida, the University of South Florida, Florida International University, Florida A&M, Florida State University, the University of Central Florida, and the Florida Education Commissioner alleging that (1) HB 7 (2022) unconstitutionally infringes on the right to free speech guaranteed by the First Amendment to the U.S. Constitution; (2) the law is void for vagueness under the Fourteenth Amendment to the U.S. Constitution; and (3) the law denies equal protection to all persons under the Fourteenth Amendment to the U.S. Constitution. Plaintiffs seek injunctive relief permanently enjoining enforcement of the legislation, a declaration that the legislation is facially unconstitutional under the First and Fourteenth Amendments to the U.S. Constitutions, and attorneys' fees and costs. *See* ECF No. 76.

On March 11, 2024, Plaintiffs served Mr. Copland with a subpoena duces tecum for deposition. Mr. Copland is a resident of New Bern, North Carolina. He works for the Manhattan Institute, located in New York, NY. The subpoena designated Tallahassee, Florida, as the place for the deposition. The parties conferred on March 21, 2024, March 22, 2024, March 28, 2024, April 1, 2024, and April 4, 2024, regarding Mr. Copland's objections to the Subpoena. On March 25,

2024, Mr. Copland served his response and objections to the Subpoena duces tecum.[1]

Mr. Copland's deposition is presently noticed for May 15, 2024.

## LEGAL STANDARD

Rule 45 requires "the court for the district where compliance is required" to

quash or modify a subpoena that:

> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(ii)-(iv). A motion to quash a subpoena under Rule

45(d)(3) must be "timely," *see* Fed. R. Civ. P. 45(d)(3)(A), which generally requires

that it be made "before the time indicated for compliance" on the subpoena, *see, e.g.*,

*Flynn v. Square One Distribution, Inc.*, No. 6:16-MC-25-ORL-37TBS, 2016 WL

2997673, at *1 (M.D. Fla. May 25, 2016). The return date of the Subpoena is May

15, 2024.

Apart from Rule 45(d)'s mandatory provision, the court may also quash or

modify a subpoena "[t]o protect a person subject to or affected by a subpoena" that

---

[1] This motion to quash is directed towards the deposition subpoena. *See Kingsberry v. United* States, 2012 WL 1296903, at *2 (S.D. Ill. Apr. 16, 2012) ("[A] party objecting to a deposition subpoena must file a motion to quash or modify the subpoena. Unlike a subpoena seeking the production of documents, a subpoena seeking a testimonial deposition cannot be objected to with written notice.").

requires:

> (i) disclosing a trade secret or other confidential research, development, or commercial information; or

> (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

Fed. R. Civ. P. 45(d)(3)(B)(i)-(ii).

Rule 45(d)(1) also requires "[a] party or attorney responsible for issuing and serving a subpoena" to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Courts must enforce this duty and "impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply."

<u>**ARGUMENT**</u>

## I.   BECAUSE THE SUBPOENA AFFORDS THE WITNESS NONE OF THE PROTECTIONS CONTAINED WITHIN RULE 45, IT MUST BE QUASHED.

Rule 45 protects non-parties like Mr. Copland by "requiring the issuer to 'take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena' and by setting out several mandatory and discretionary grounds for quashing a subpoena." *Jordan v. Commissioner, Mississippi Department of Corrections*, 947 F.3d 1322 (11th Cir. 2020), (quoting Fed. R. Civ. P. 45(d)(1), (3)). Plaintiffs' Subpoena runs afoul of almost all of these safeguards, including because

4

it: (i) seeks to compel Mr. Copland's appearance at a deposition far outside of Rule 45(c)'s geographic limits; (ii) seeks disclosure of privileged or other protected matter when no exception or waiver applies; (iii) imposes undue burdens on Mr. Copland; (iv) asks for disclosure of confidential research, development, or commercial information; and (v) requests the disclosure of an unretained expert's opinion.  For these reasons, the Subpoena should be quashed.

### A. Under Rule 45(d)(3)(A), this Court Must Quash or Modify the Subpoena.

Rule 45(d) requires this Court to quash/modify this Subpoena for three reasons. Rule 45(d)(3)(A)(i)-(iv) provides four mandatory grounds which require this court to quash or modify the Subpoena.  As demonstrated below, Plaintiffs have violated three of these provisions.

1. <u>The Subpoena requires Mr. Copland to comply beyond the geographical limits specified in Rule 45(c).</u>

"Rule 45 distinguishes between an 'issuing court' and the 'court of compliance.'" *Lincare Inc. v. Tinklenberg*, 8:20-CV-1002-T-02AAS, 2020 WL 6484994, at *2 (M.D. Fla. Nov. 4, 2020); *see* Fed. R. Civ. P. 45(a)(2), (c)(2)(a). A subpoena must be issued "from the court where the action is pending." Fed. R. Civ. P. 45(a)(2). "However, Rule 45 requires that the place of compliance be 'within 100 miles of where the person resides, is employed, or regularly transacts business in person.'" *Creative Choice Homes XXX, LLC*, 2021 WL 2551528, at *2 (quoting Fed.

R. Civ. P. 45(c)(2)(A)). A party commanding the attendance of a non-party at an oral deposition is subject to the same geographical limits. *See* Fed. R. Civ. P. 45(c)(1)(A). And, where a subpoena, like this one, commands compliance outside of Rule 45's geographical limit, it must be quashed or modified. *See Lincare Inc*., 2020 WL 6484994, at *1; *In re: Subpoena Upon NeJame Law, P.A*., 6:16-MC-8-ORL-41TBS, 2016 WL 1599831, at *4 (M.D. Fla. Apr. 21, 2016) ("The subpoena is subject to being modified or quashed because it requires compliance beyond the geographical limit established by Rule 45(c)(2)(A)."); *Merlin Petroleum Co.*, 2016 WL 9244728, at *1 (quashing non-party subpoena duces tecum requiring compliance in Jacksonville, Florida from corporation with principal place of business in Tampa, which is more 100 miles away from Jacksonville).

Case law within the Eleventh Circuit and across the country interpret place of compliance to be the location identified on the face of the Subpoena. While Rule 45(c) sets the parameters for the permissible place of compliance, the courts within the Eleventh Circuit have interpreted place of compliance as the location identified in the subpoena. *See NAACP v. Lee*, 2021 WL 5014156 (N.D. Fla. Sept. 24, 2021); *Grippa v. Rubin*, 2022 WL 1624808, *1 (N.D. Fla. February 22, 2022) (After noting Tallahassee was more than 400 miles away from where the deponent presumably "resides, is employed, or regularly transacts business in person," the court found the subpoena "improperly required compliance from an entity beyond

the 100-mile geographical limit of Rule 45(c).")(collecting cases).Mr. Copland resides in North Carolina, works in North Carolina, and does not regularly conduct business in Tallahassee, Florida. Therefore, the Subpoena is facially defective as it requires compliance well beyond the 100-mile limit established in Rule 45(c)(1)(A).

2. The Subpoena requires disclosure of privileged or other protected matter and no waiver applies.

Apart from the attempted end-run on a previously resolved subpoena[2], this subpoena is wholly objectionable as a direct afront to the First Amendment, and Rule 45's protection of privileged information. A subpoena must be quashed if it requires disclosure of "privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii). Plaintiffs' attempt to employ the Federal Rules of Civil Procedure to force the compelled disclosure of a non-party's First Amendment protected public-policy-related thoughts and opinions cannot be tolerated. Further underscoring the impropriety of this Subpoena, Mr. Copland appears to have been targeted by the Plaintiffs and subject to this subpoena solely by virtue of previously exercising his protected First Amendment rights and expressing views that Plaintiffs do not agree with. Plaintiffs' attempts to intimidate, harass, and chill Mr. Copland's protected free speech rights by targeting him with a federal subpoena should not be condoned

---

[2] The Plaintiffs had previously served Mr. Copeland's employer a subpoena to testify at a deposition in a civil action and request for production of documents seeking the same categories of documents. The Manhattan Institute responded and objected. Ultimately, Plaintiffs and the Manhattan Institute resolved the dispute.

and is antithetical to the bedrock principles of the First Amendment.

The First Amendment privilege insulates Mr. Copland from deposition because Plaintiffs have not—*and cannot*—demonstrate that the information they seek satisfies the First Amendment's heightened relevance standard: that the sought after information be highly relevant, *Curling v. Raffensperger*, No. 1:17-CV-2989-AT, 2021 WL 5162576, at *2 (N.D. Ga. Nov. 5, 2021) (citation omitted), and go to the "heart of the matter," *Link v. Corcoran*, Case No. 4:21cv271-MW/MAF, Order Denying Motion to Compel, ECF No. 212, at *15 (N.D. Fla. 12, 13, 16 2022). The Subpoena seeks to compel disclosure of information regarding internal "notes, memoranda, research, written analysis, white papers, model legislation, briefing materials, reports or opinions" and communications with public policy think tanks; as well as communications with government entities concerning H.B. 57, H.B. 7, and Critical Race Theory. If compelled to testify to those categories, there is no question it will have a chilling effect upon Mr. Copland's First Amendment rights.

For example, if compelled to disclose internal discussions about policy, advocacy, and analysis, such forced disclosure would chill Mr. Copland's willingness to engage in (or associate to engage in) public policy analysis related to controversial topics. Even the Plaintiffs' targeting of Mr. Copland with this Subpoena solely by virtue of his exercise of his First Amendment-protected activities has a chilling effect. *See Perry*, No. 09-17241, Dkt. No. 24 at 6 (ACLU-

NC arguing internal strategy documents are "core First Amendment Information" the disclosure of which "will not so much chill as freeze" protected expression).

Plaintiffs' counsel—the American Civil Liberties Union, an organization founded to purportedly protect the very same liberties they now attempt to trample—cannot reasonably dispute this. In *Perry v. Schwarzenegger*, the American Civil Liberties Union of Northern California ("ACLU-NC") submitted an amicus brief because the appellants served subpoenas on the ACLU-NC seeking its "internal campaign documents" related to its advocacy in connection with Proposition 8. No. 09-17241 (9th Cir.), Dkt. No. 24 at 2. The ACLU-NC argued that an advocacy organization's internal strategy documents (e.g., "private e-mails from those who were central to the campaign, strategy plans, and 'brainstorming' sessions with campaign consultants and pollsters") were "core First Amendment information" and "precisely the kinds of documents that quintessentially should not become the subject of discovery, or public disclosure, because they will not so much chill as freeze the conduct of political campaigns in their tracks." *Id.* at 6. Therefore, the ACLU's own words confirm the Subpoena is objectionable, improper, and should be withdrawn by Plaintiffs.

> a. *The Subpoena seeks disclosure of protected political expression, including the right to associate and the right of free speech.*

Mr. Copland objects to the Subpoena as it attempts to infringe on his First

Amendment privilege by attempting to compel disclosure of quintessential First Amendment protected expression, including Mr. Copland's efforts to petition the government, to associate with others to advance a shared political belief, and to exchange ideas and formulate strategy. Such compelled disclosure will chill Mr. Copland's protected activity. *See, e.g.*, *Perry*, 591 F.3d at 1166 & n.8 (granting writ of mandamus and requiring the district court enter a protective order where defendants showed "discovery would likely have a chilling effect on political association and the formulation of political expression"); *All. of Auto. Mfrs., Inc. v. Jones*, No. 4:08CV555-MCR/CAS, 2013 WL 4838764, at *4 (N.D. Fla. Sept. 11, 2013) (recognizing courts have generally not "permitted probing into the political affairs of citizens, lobbyists, or other proponents of legislation" and granting motion for protective order).   There is no reason testimony regarding these documents should be treated differently.

The party seeking to invoke the First Amendment associational privilege bears "the burden of making a prima facie showing of infringement on the right by the requested discovery." *Link v. Corcoran*, No. 4:21-cv-0027, slip op. at 15 (N.D. Fla. Dec. 13, 2022) (citing *United States v. Bennett*, No. 05-CR-6050 CJS (W.D.N.Y. Oct. 21, 2005)).   "To do so, [the moving party] must demonstrate a 'reasonable probability that the compelled disclosure . . . will subject them to threats, harassment, or reprisals from either Government officials or private parties.'" *Link*,

No. 4:21-cv-0027, slip op. at 8.  Further, the moving party must provide evidence, not just argument, to meet their burden. *Id.*  However, "in making a prima facie case of harm, the burden is light in view of the crucial place speech and associational rights occupy under our constitution."  *Christ Covenant Church v. Town of Sw. Ranches*, No. 07-60516CIV, 2008 WL 2686860, at *6 (S.D. Fla. June 29, 2008) (cleaned up).

Mr. Copland's affidavit satisfies this light burden, providing, in part:

> In developing public policy positions and determining the best way to advance those positions, I consult and associate with different people from varying groups and departments within the Institute. These discussions are private and, in some instances, involve confidential and proprietary information… If we believed these strategic discussions could become subject to disclosure in a lawsuit or could be provided to groups with adversarial interests in the political arena, our discussions would have been more restrained or ceased altogether.  If these communications are forced to be disclosed now, it will deter us from associating to engage in such discussions in the future and from petitioning the government in support of our policy views. The impact on our discussions and efforts would reach far beyond the specific activities to which the disclosed information relates.

Ex. B, ¶11.

> In addition to associating and discussing issues with those inside the Institute, I also routinely work with members of other think tanks, such as The Heritage Foundation and the Claremont Institute, to discuss common regulatory and policy issues and to coordinate joint outreach efforts to policymakers, rulemakers,

courts, and stakeholders. Information and ideas are exchanged with other members of these associations in strategic debates on legislative proposals and agency rulemaking with the expectation that the discussions are confidential and private… If these communications are forced to be disclosed now, it will deter me from engaging in such discussions in the future with other members of such associations and from participating in their future efforts at influencing public policy and discourse. The impact on our discussions and efforts would reach far beyond the specific activities to which the disclosed information relates.

Ex. B, ¶12

As noted previously, disclosure of the Institute's internal communications regarding the lawmaking and rulemaking process will adversely affect the willingness of the Institute and its employees to participate in such activities and will have a chilling effect on my and the Institute's exercise of our rights under the First Amendment to associate, speak freely, and petition the government in support of our policy views.

Ex. B, ¶14

…I would not offer my candid advice and opinions if my statements on policy issues and advocacy strategy were subject to disclosure. Based on my experience, I believe that other staff and employees of the Institute would not communicate candidly with me if their statements were subject to future disclosure. This free flow of information would be inhibited or might cease altogether if the Institute or its employees believed or knew this information could be subject to disclosure.

Ex. B, ¶15

> For public-policy think tanks to agree upon common positions and strategies, there must be a frank and open exchange of views and some debate. Any accommodation of different views among the association would be impossible if its members were not permitted to voice their views, criticize other's views, and forge a consensus, all of which would not happen if the members' discussions were subject to disclosure.

Ex. B, ¶16

> The reason for my concern of a chilling effect is apparent. The Institute's policy views and actions are potentially contrary to the interests of groups, such as the NAACP or ACLU, with divergent point of view. These groups have the incentive to retaliate against the Institute for the Institute's policies….

Ex. B, ¶17

> I must be careful of the policy stances I take and of public statements I make. I am careful in selecting the areas where I and the Institute choose to engage with the executive, legislative, and judicial branches. We constantly worry about the risk of reprisals from our policy stances. Accurately assessing those risks requires unfettered discussion. Public disclosure of discussions with colleagues and allies would substantially chill my and our right to participate in any matter of public importance.

Ex. B, ¶18.

The possibility of threats, harassment, or reprisals is not the only consideration for determining whether the moving party's prima facie burden has been met. Additional considerations include whether the party requesting the discovery is a

"'type of Government entity'" as opposed to "'purely private parties,'" *Link*, No. 4:21-cv-0027, slip op. at 8, and whether the party asserting the privilege asserts it or its members "ever took a public stance . . . on any issues of public political, social, or cultural importance." *Id.*

These considerations further demonstrate that Mr. Copland has carried his burden to establish a prima facie case of infringement: The parties seeking Mr. Copland's testimony are private parties; he is a member of an organization that takes public stances on issues of public, political, social, or cultural importance; "[a]nd the parties seeking to compel disclosure of [his] internal documents and communications concerning [the Manhattan Institutes'] members, strategy, and advocacy are, in many instances, [his] "public policy opponents." *Id.* at 14.  Mr. Copland's the Subpoena should be quashed.

b. *The Subpoena infringes upon Mr. Copland's rights under the Petition Clause.*

Mr. Copland further objects to the Subpoena to the extent it infringes on his rights safeguarded by the Petition Clause of the First Amendment. *See Mine Workers v. Illinois Bar Assn.*, 389 U.S. 217, 222 (1967) ("[T]he right[] . . . to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights" and are "intimately connected both in origin and in purpose, with the other First Amendment rights of free speech and free press.").  As Mr. Copland's

affidavit demonstrates, the Subpoena chills his right to petition the government:

> In developing public policy positions and determining the best way to advance those positions, I consult and associate with different people from varying groups and departments within the Institute. These discussions are private and, in some instances, involve confidential and proprietary information. Information and ideas are exchanged in internal strategic debates on legislative proposals and agency rulemaking with the expectation that the discussions are confidential and private. If we believed these strategic discussions could become subject to disclosure in a lawsuit or could be provided to groups with adversarial interests in the political arena, our discussions would have been more restrained or ceased altogether.  If these communications are forced to be disclosed now, it will deter us from associating to engage in such discussions in the future and from petitioning the government in support of our policy views. The impact on our discussions and efforts would reach far beyond the specific activities to which the disclosed information relates.

Ex. B at ¶9.

   c. *The Subpoena seeks information protected by the Journalist Privilege.*

   Mr. Copland further objects to the Subpoena to the extent it infringes on his journalist privilege. *See Price v. Time, Inc.*, 416 F.3d 1327, 1343 (11th Cir. 2005) ("[A] reporter has a First Amendment privilege which protects the refusal to disclose the identity of confidential informants."). Plaintiffs cannot overcome this privilege as they have made no reasonable efforts to obtain the subpoenaed documents from another source.  *Id.*

d. *The Subpoena seeks information protected by the Scholars' Privilege.*

Mr. Copland also objects to the Subpoena to the extent it requires disclosure of communications protected by the scholars' privilege. *See Sweezy v. New Hampshire*, 354 U.S. 234, 261-62 (1957) (Frankfurter, J., concurring) ("For society's good—if understanding be an essential need of society—inquiries into" problems that are the "preoccupations of anthropology, economics, law, psychology, sociology and related areas of scholarship" "must be left as unfettered as possible. Political power must abstain from intrusion into this activity of freedom . . . ."). As a senior fellow and Director of Legal Policy for the Manhattan Institute, Mr. Copland engages in research, writing, and education. Mr. Copland's search for knowledge and any ultimate dissemination of his research "must be left as unfettered as possible." *Id.* Enforcement of this Subpoena seeking disclosure of Mr. Copland's research will "chill[ ] the exercise of [his] First Amendment rights." *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1276 (7th Cir. 1982); *see also In re R.J. Reynolds Tobacco Co.*, 136 Misc. 2d 282, 287, 518 N.Y.S.2d 729, 734 (N.Y. Sup. Ct. 1987) (quashing subpoenas seeking research data and finding "forced compliance with the subpoena would result in an interference with [the researcher's] academic freedom.").

Indeed, enforcement of the Subpoena in the face of Mr. Copland's scholar's privilege would undermine and work to destroy the claimed right that Plaintiffs look

16

to vindicate in this lawsuit. Plaintiffs are challenging a Florida statute they argue infringes on their academic freedom in violation of the First Amendment. At the same time, however, Plaintiffs are attempting to commandeer the federal courts through the Subpoena to chill Mr. Copland's First Amendment, protected scholarly research and writing. Plaintiffs' embrace of academic freedom appears to extend only to those viewpoints of which they approve, a one-sided, viewpoint-based conception of academic freedom that inverts our First Amendment principles. *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

e. *The Subpoena seeks to compel disclosure of private information.*

Mr. Copland also objects that Plaintiffs, through the Subpoena, seek to force him to share his internal thoughts and ideas that might not yet have been disseminated to the public or might be incomplete.  In doing so, it compels Mr. Copland to affirm potentially non-public, incomplete, or contrary views. *Price,* 416 F.3d at 1343.

3.  The Subpoena subjects Mr. Copland to undue burden.

Among the other mandatory grounds for quashing a subpoena is whether the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).  The undue burden analysis requires the court to "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." 9A Wright & Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2019); *see*

17

*also Virginia Dep't of Corr.*, 2017 WL 5075252, at *5, *10 (applying the undue burden analysis). Several factors inform the analysis, including the "relevance of the information requested" to the underlying litigation, the "burden imposed" by compliance, and the subpoena recipient's status as a non-party. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

Mr. Copland, a private citizen who does not reside in Florida, let alone serve in the Florida Legislature, objects to the Subpoena as seeking irrelevant information because the requested communications reflecting the likely topics of inquiry have no bearing on the legislative intent of the challenged statute and, by extension, this Court's interpretation of the statute or its constitutionality.  Mr. Copland further objects to the Subpoena as seeking information from him that is irrelevant to either party's claims or defenses to the extent it seeks testimony related to materials created after the passage of the challenged legislation.  Such testimony cannot serve to establish the legislature's intent related to the challenged legislation. *See, e.g., Blanchette v. Conn. Gen. Ins. Corp.*, 419 U.S. 102, 132 (1974) ("[P]ost-passage remarks of legislators, however explicit, cannot serve to change the legislative intent . . . expressed before the Act's passage.").

And even if the information sought through the Subpoena has some marginal relevance, the information sought is not "highly relevant," *Curling*, 2021 WL 5162576, at *2 (citation omitted), and does not go to the "heart of the matter," *Link*

18

Case No. 4:21cv271-MW/MAF, ECF No. 212, at *15, such that the First Amendment privilege may be cast aside. "When dealing with state law, federal courts apply the state courts' interpretation of the law." *TRA Farms, Inc. v. Syngenta Seeds, Inc.*, 932 F. Supp. 2d 1251, 1252–53 (N.D. Fla. 2013). Florida courts first look to the actual language of the statute to determine legislative intent—where the language is clear and unambiguous, no further inquiry is necessary. *See id.* at 1253 (citing *Koile v. State*, 934 So.2d 1226, 1230–31 (Fla. 2006)). "In instances of an ambiguity in statutory language, [a court] may resort to the rules of statutory construction, which permit [the court] to examine the legislative history to aid in [the] determination regarding legislative intent." *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013).

Courts may also evaluate legislative intent—specifically, whether the legislature had discriminatory intent—by examining the factors enumerated in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), with the additional factors recognized by the Eleventh Circuit in *Greater Birmingham Ministries v. Secretary of State for State of Alabama*, 992 F.3d 1299 (11th Cir. 2021). [3] The anticipated scope of inquiry into Mr. Copland's thoughts and

---

[3] *Greater Birmingham Ministries* summarized the *Arlington Heights* factors to include:
(1) the impact of the challenged law; (2) the historical background; (3) the specific sequence of events leading up to its passage; (4) procedural and substantive

opinions have no bearing on those factors or addressing the questions before this Court.  Given the marginal relevance of the sought-after testimony, the interests served by demanding compliance with the Subpoena are slight.

Conversely, the interests furthered by quashing the Subpoena are high.  "[T]he 'Constitution guarantees a right to associate to engage in activities which the First Amendment protects, including speech, assembly, petition for the redress of grievances and the exercise of religion' and such 'protections apply in the context of discovery orders.'"  *All. of Auto. Mfrs., Inc. v. Jones*, No. 4:08CV555-MCR/CAS, 2013 WL 4838764, at *4 (N.D. Fla. Sept. 11, 2013); 707 F.Supp.2d at 1151–52 (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984)); *NAACP v. State of Ala.*, 357 U.S. 449, 462–63 (1958); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987).  This includes the right to associate.  *Kusper v. Pontikes*, 414 U.S. 51, 56–57 (1973) ("freedom to associate with others for the common advancement of political beliefs and ideas is ... protected by the First and Fourteenth Amendments."). "Implicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in

departures; and (5) the contemporary statements and actions of key legislators. And, because these factors are not exhaustive, the list has been supplemented: (6) the foreseeability of the disparate impact; (7) knowledge of that impact, and (8) the availability of less discriminatory alternatives.

992 F.3d at 1322.

private." *Perry* at 1162.

This privilege applies to discovery orders "even if all of the litigants are private entities." *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir.1987); *see also Adolph Coors Co. v. Wallace*, 570 F.Supp. 202, 208 (N.D.Cal.1983) ("[A] private litigant is entitled to as much solicitude to its constitutional guarantees of freedom of associational privacy when challenged by another private party, as when challenged by a government body."); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 n.5 (9th Cir. 2010).

In addition to discouraging individuals from joining campaigns, the threat that internal campaign communications will be disclosed in civil litigation can discourage organizations from joining the public debate over an initiative. *See* Letter Brief of Amicus Curiae American Civil Liberties Union of Northern California, at 2 (explaining that the ACLU's internal campaign information has been subpoenaed in this case); *Perry*, 591 F.3d at 1162 n.8. "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *NAACP v. Ala.*, 357 U.S. 449, 460 (1958).

The *Perry* court cautioned that "[i]n identifying two ways in which compelled disclosure of internal campaign communications can deter protected activities—by chilling participation and by muting the internal exchange of ideas—we do not suggest this is an exhaustive list." 591 F.3d at 1163. Other such ways disclosures of

21

the sort challenged here could chill protected activities are present within this matter.
As shown in section I(A)(2) above, the First Amendment protects a host of freedoms
at the core of American life: it "protects political association as well as political
expression,' and the 'freedom to associate with others for the common advancement
of political beliefs and ideas,'" *Id.* at 1159 (citations omitted); it protects an author's
right to remain anonymous, which extends "to the anonymity in the advocacy of
political causes," *McInture v. Ohio Elections Comm'n*, 514 U.S. 334, 342-43 (1995),
and it protects the right to petition the government, *Mine Workers v. Illinois Bar
Assn.*, 389 U.S. 217, 222 (1967). Where compelled disclosure has "a chilling effect
on . . . the exercise of" these fundamental First Amendment rights, the rights are
"infringe[d]." *Perry*, 591 F.3d at 1160.

As reflected in Mr. Copland's affidavit and above, enforcement of the
Subpoena will have a chilling effect on the exercise of his rights, consequentially
they have been infringed.  *See* Ex. B.  Because of the fundamental nature of these
rights, a balancing of the interests favors quashing the Subpoena.

### B. This Court Should Exercise its Discretion Under Rule 45(d)(3)(A), to Quash or Modify the Subpoena.

This Court should exercise its discretion to quash or modify the Subpoena
under Rule 45(d)(3)(B), as the Subpoena requires (i) disclosing confidential
research, development, or commercial information; or (ii) disclosing an unretained

expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

1. <u>The Subpoena seeks confidential research, development, or commercial information that is protected under the First Amendment's Scholar's privilege.</u>

Rule 45(d)(3)(B)(i) requires a court evaluating a subpoena that seeks to disclose confidential information to "weigh the claim to privacy against the need for disclosure." *See Festus & Helen Stacy Found., Inc. v. Merrill Lynch, Pierce Fenner & Smith Inc.*, 432 F. Supp. 2d 1375, 1380 (N.D. Ga. 2006); *see also United States ex rel. Willis v. SouthernCare, Inc.*, No. CV410-124, 2015 WL 5604367, at *5 (S.D. Ga. Sept. 23, 2015) (applying a balancing test to the Rule 45(d)(3)(B)(i) analysis to determine "whether the need for disclosure outweighs [the] claim to privacy"). Indeed, federal courts have recognized that privacy interests and confidentiality concerns can factor into a decision whether to quash a subpoena under Rule 45, even though the information requested by the Subpoena is not subject to a federal evidentiary privilege. *Jordan*, 947 F.3d at 1336 (citations omitted).

The Institute is a non-profit community of scholars, journalists, activists, and civic leaders engaged in research, writing, and education. In other words, the search for knowledge and its dissemination. Mr. Copland objects to the Requests to the extent that disclosure of "notes, memoranda, research, written analysis, white papers, model legislation, briefing materials, reports or opinions" requires disclosure

of a trade secret or other confidential research, development, or commercially sensitive information.

Enforcement of a subpoena seeking research data "carries the potential for chilling the exercise of First Amendment rights." *Dow Chemical Co. v. Allen,* 672 F.2d 1262, 1276 (7th Cir. 1982); *see also In re R.J. Reynolds Tobacco Co.*, 518 N.Y.S.2d 729, 734 (N.Y. Sup. Ct. 1987) (quashing subpoenas seeking research data and finding "forced compliance with the subpoena would result in an interference with [the researchers'] academic freedom."). The subpoena at issue seeks research data and should be quashed. *Dow Chemical* at 1276.

    2.   The Subpoena seeks an unretained expert's opinion.

Mr. Copland is a senior fellow and director of Legal Policy at the Institute. He is an accomplished author and speaker in the area of America's civil- and criminal-justice systems, having published books, briefs, articles, and opinion pieces, testified before legislative bodies, and made hundreds of media appearances, many of which relate to Critical Race Theory.[4] In short, he is an expert in law and economics. *See* Ex. B.

As the Advisory Committee notes on the 1991 amendment to Rule 45 explain, Rule 45(c)(3)(B)(ii) was designed to "provide[ ] appropriate protection for the

---

[4] See, https://manhattan.institute/person/james-r-copland.

intellectual property of the non-party witness . . . ." Fed. R. Civ. P. 45(c)(3)(B)(ii)

advisory committee's note.  In enacting these provisions, the Advisory Committee

noted that "[a] growing problem has been the use of subpoenas to compel the giving

of evidence and information by unretained experts.  *Id.*  And that:

> [a]rguably the compulsion to testify can be regarded as a
> "taking" of intellectual property. The rule establishes the
> right of such persons to withhold their expertise, at least
> unless the party seeking it makes the kind of showing
> required for a conditional denial of a motion to quash as
> provided in the final sentence of subparagraph (c)(3)(B);
> that requirement is the same as that necessary to secure
> work product under Rule 26(b)(3) and gives assurance of
> reasonable compensation.

*Id.*

Against this backdrop, when considering whether to quash or modify a

subpoena under this rule this Court's decision "should be informed by," among

other factors, "the degree to which the expert is being called because of his

knowledge of facts relevant to the case rather than in order to give opinion

testimony . . . ." *Id*. (quoting *Kaufman v. Edelstein*, 539 F.2d 811, 822 (2d Cir.

1976)).

Here, the testimony sought by Plaintiffs should be considered opinion, not

fact testimony.  In *Daggett v. Scott*, the court considered whether the plaintiffs were

entitled to depose a non-party human resources consultant hired by one of the law

firms retained by the defendant to render a legal opinion.  No. 15-mc-00065-CMA-

MJW, 2015 WL 3407314, at *1 (D. Colo. May 26, 2015). The resources consultant moved to quash the subpoena claiming she was an unretained expert under Rule 45(d)(3)(B)(ii). *Id.* The court granted the motion in part and denied it in part.

In so doing, the *Dagget* court noted that "in situations like this, where experts have been hired to perform factual investigations as part of a company's due diligence (rather than in anticipation of specific litigation), courts draw a distinction between (1) the factual record compiled by the expert and (2) the opinion and analysis performed by the expert." *Id.* at *2 (citations omitted). The court further noted that the distinction was found in the text of the rule itself. *Id.* ("the expert's factual record 'describe[s] specific occurrences in dispute.'"). Because Plaintiffs asserted they would only inquire as to the non-party witness's factual investigation, the court allowed the deposition to proceed with the additional ruling that the Plaintiff would not be permitted to move beyond the factual investigation. *Id.*

Here, the Subpoena does not state the subject(s) of inquiry. However, Schedule A to the Subpoena, setting forth the documents to be produced at deposition, provides guidance as to the areas of inquiry and demonstrates Plaintiffs seek Mr. Copland's expert opinions on a variety of matters. Most telling of these is Request No. 8, which seeks "[a]ny and all notes, memoranda, research, written analysis, white papers, reports or opinions composed, drafted, or created by You regarding H.B. 57, H.B. 7 and/or Critical Race Theory in primary, secondary, or

26

higher education in Florida."

First, H.B. 57 was never considered in committee, was not passed, and is not part of this lawsuit. *See* ECF No. 76.  Further, "any and all research" possessed by Mr. Copland regarding H.B. 7 and/or Critical Race Theory is far beyond the scope of this litigation.  Next, the research requested is untethered to any suggestion that the Florida Legislature was aware of any of the research that he may have possessed, let alone relied or endorsed such research such that it could be relied on as indicia of legislative intent.  Finally, even if such information was somehow relevant and implicated in the legislative process, the Florida Legislature would be the best source for production of records that were related to its processes, not Mr. Copland.

Accordingly, for any of the plethora of reasons discussed above, the Subpoena should be quashed.

## II.   MR. COPLAND IS ENTITLED TO AN AWARD OF FEES AND COSTS FOR BRINGING THIS MOTION.

There is no conceivable basis for Plaintiffs' attorneys to believe that this subpoena was permissible because it so clearly violated the provisions of Rule 45. No attorney who was acting in good faith and trying to follow the Federal Rules of Civil Procedure could believe that it is permissible to serve a subpoena that: (i) compelled appearance more than 100 miles from the place of compliance; (ii) required disclosure of patently privileged or other protected matters where no

exception or waiver applies; (iii) imposed undue burdens; (iv) seeks disclosure of confidential research, development, or commercial information; and (v) seeks disclosure of an unretained expert's opinion.  Cumulatively, and individually, these violations imposed an undue burden and expense on the non-party deponent. Rules 45(d)(1) and Rule 45(d)(3)(C)(ii) provide a bases for shifting expenses.

Plaintiffs had a duty to avoid undue burden or expense when issuing the Subpoena. Rule 45(d)(1) provides:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction-which may include lost earnings and reasonable attorney's fees-on a party or attorney who fails to comply.

The Court "must . . . impose an appropriate sanction" upon Plaintiffs because their attorneys did absolutely nothing to in any way try and avoid or minimize any of the tremendous burden imposed by the Subpoena to Mr. Copland until after they were notified of Mr. Copland's objections.  *Id.*  This breach was even more egregious given that Plaintiffs had a negotiated a settlement with Mr. Copland's employer to obtain and produce the very same records, including obtaining an affidavit to authenticate the records that the Institute produced.

And because the Subpoena impermissibly seeks both confidential information and an unretained expert's opinion or information as described in Rule 45(d)(3)(B), the Court may order appearance conditioned upon the serving party ensuring the unretained expert will be reasonably compensated.  Fed. R. Civ. P. 45(d)(3)(C)(ii).

Although Plaintiffs, after negotiation, offered to allow testimony via Zoom their actions were too little, too late.  *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924-RLR, 2022 WL 19919934, at *3 (S.D. Fla. May 23, 2022) (Rule 45(d) "looks to the entire course of conduct involved in issuing and subsequently seeking to enforce a third-party subpoena.").  A party may not avoid their failure to follow Rule 45's requirement by offering to modify the subpoena after the non-party has incurred substantial undue burden and expense.  Should this Court compel compliance over Mr. Copland's objection, Federal Rule of Civil Procedure 45(c)(2)(B)(ii) provides that if a non-party objects to the subpoena but a court nonetheless commands a non-party to produce materials, the court's order "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  Fees and costs should be awarded to provide this protection.

## Relief Requested

The Court is required to quash a subpoena which fails to comply with the limitations set forth in Rule 45.  The Court also has the discretion to grant wide

ranging relief "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Accordingly, Defendants respectfully request an Order from this Court prohibiting Plaintiffs from deposing Mr. Copland for the reasons described above, including (i) Plaintiff's failure to comply with Rule 45's requirements (ii) Plaintiffs' inability to establish the necessary prerequisites for invading Mr. Copland's First Amendment protections, and (iii) awarding fees and costs for the bringing of this motion.

Respectfully submitted on April 16, 2024.

*/s/ George T. Levesque*
George T. Levesque (FBN 555541)
Thomasina F. Moore (FBN 57990)
GRAYROBINSON, P.A.
Post Office Box 11189
Tallahassee, Florida 32302-3189
Telephone: 850-577-9090
George.Levesque@gray-robinson.com
Thomasina.Moore@gray-robinson.com
*Attorneys for Non-Party James R. Copland*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

Pursuant to Local Rule 7.1(B), the undersigned certifies that counsel for the Non-party witness conferred in good faith with counsel for Plaintiffs regarding the relief requested on March 21, 2024, March 22, 2024, March 28, 2024, April 1, 2024, and April 4, 2024, but the parties were unable to reach resolution.

/s/ George T. Levesque
George T. Levesque (FBN 555541)
GRAYROBINSON, P.A.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

The undersigned certifies that this Motion contains 6,764 words.

/s/ George T. Levesque
George T. Levesque (FBN 555541)
GRAYROBINSON, P.A.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the James R. Copland's Response and Objections to Plaintiffs' Subpoena to Testify at a Deposition in a Civil Action and Request for Production of Documents has been furnished by electronic mail to Avatara Smith-Carrington, Counsel for Plaintiffs, at acarrington@naacpldf.org on this 16th day of April, 2024.

/s/ George T. Levesque
George T. Levesque (FBN 555541)
GRAYROBINSON, P.A.